**Robert MUH, Plaintiff-Appellant,**

v.

**NEWBURGER, LOEB & CO., INC., a Delaware Corporation, and Does I through XX, Defendants-Appellees.**

**No. 74–2783.**

United States Court of Appeals, Ninth Circuit.

July 8, 1976.

Michael R. Mitchell (argued), Los Angeles, Cal., for plaintiff-appellant.

Donald H. Shaw (argued), of Kantor, Shaw & Davidoff, New York City, for defendants-appellees.

OPINION

Before ELY and WALLACE, Circuit Judges, and ORRICK,* District Judge.

WALLACE, Circuit Judge:

We have before us the question whether an arbitration clause contained in the constitution of the New York Stock Exchange is binding upon the parties and forecloses court action on the claim asserted. Muh brought suit on a contract in the California state court against Newburger, Loeb & Co., Inc. (Newburger) and the case was removed to the federal court based upon diversity of citizenship. Newburger then moved for a stay of the action pursuant to 9 U.S.C. § 3, contending that the claim must be arbitrated. The district court agreed and Muh appealed. We have jurisdiction pursuant to 28 U.S.C. § 1292(a). *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 451–52, 55 S.Ct. 313, 79 L.Ed. 583 (1935); *see* 9 J. Moore, Federal Practice ¶ 110.20[4.–1], at 247–48 (2d ed. 1975). We affirm.

Newburger is a stock brokerage corporation with offices in New York City and Los Angeles. Muh was the owner of a substantial number of shares of Newburger and was employed in New York City as a senior executive officer. On February 11, 1972, Muh agreed to sell his 200,000 shares of Newburger at $2 per share to three individuals in separate transactions as follows:

| Date | No. of Shares | Price |
| --- | --- | --- |
| February 23, 1972 | 25,000 | $ 50,000 |
| January 31, 1973 | 25,000 | 50,000 |
| June 30, 1973 | 75,000 | 150,000 |
| June 30, 1974 | 75,000 | 150,000 |

At the same time, a consulting agreement was entered into between Muh and the stock purchasers together with Newburger. Muh was to become a vice-president in the Los Angeles office. If he chose to resign that office, he could elect to become a "consultant" for three years at $35,000 per year.

In a letter, also dated February 11, 1972, Muh agreed to waive his right to receive consulting fees for the period January 1973 through June 1973 provided the buyers

* Honorable William H. Orrick, Jr., United States District Judge, Northern District of California, sitting by designation.

made payment to Muh of $50,000 due for 25,000 shares of Newburger stock on January 31, 1973. Muh also agreed in the same letter to resign as a consultant and waive his right to receive any additional consulting fees provided the buyers paid Muh the third installment of $150,000 due for the purchase of 75,000 shares on June 30, 1973.

On October 10, 1972, Muh elected to become a consultant. Muh was paid consulting fees for the period October 11 through November 1972. Consulting fees due for the period January through June 1973 were waived because in January 1973 Muh was paid $50,000 due pursuant to the stock purchase agreement. Payment of $150,000 due under the stock purchase agreement on June 30, 1973, was not made. Newburger apparently was experiencing financial difficulty.

On March 18, 1974, Muh demanded that Newburger pay arrears upon his consulting agreement in the sum of $23,328. By letter dated March 20, 1974, Newburger denied liability. Muh brought suit for anticipatory breach of the agreement, seeking to recover amounts past due and to become due under the agreement. Newburger contends that the consulting agreement is invalid because it was not approved by the New York Stock Exchange and is illegal because it provided for the use of corporate funds as the consideration for and guarantee for the agreement between Muh and the stock purchasers.

■ Although there are a multitude of contentions raised and discussed by the parties, many are extraneous to the core issue: was there a binding agreement between the parties to arbitrate the issues in dispute? If there were, the entire controversy must be referred to the arbitrator, including the validity of the contract and the issues of liability and of damages. *Prima Paint*

*Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

It is clear that the consulting agreement itself contained no express arbitration provision. Newburger contends that an agreement to arbitrate exists by virtue of certain rules of the New York Stock Exchange. In February 1972 when the consulting agreement was executed, Muh was an allied member of the New York Stock Exchange and Newburger was a member corporation. As an allied member, Muh executed and filed a form in which he agreed to be governed by the Constitution and Rules of the Board of Governors of the Exchange. Article VIII, section one of the constitution provides:

> Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, . . . be submitted for arbitration, in accordance with the provisions of the Constitution and the rules of the Board of Governors.

If this provision is binding upon the parties, it clearly requires arbitration of this dispute and the district court must be affirmed.[1]

Muh terminated his allied membership on March 16, 1972; Newburger terminated its membership on December 6, 1973. Muh argues that since neither party was an Exchange member when the dispute arose, the Exchange rules bind neither. We reject this contention.

■ The securities industry is somewhat unique in that self-regulation by registered Exchanges is based upon statute. 15 U.S.C. § 78f. *See also Silver v. New York Stock Exchange,* 373 U.S. 341, 349–57, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

---

1. At the time the consulting agreement was executed, Muh was also a registered employee of Newburger and in that capacity had agreed "that any controversy between me and any member . . . arising out of my employment or the termination of my employment shall be settled by arbitration . . . ." Muh's registration was terminated on October 16, 1972. Because we hold that the arbitration provision applicable to allied members binds the parties and covers the dispute in this case, we need not decide whether the controversy "arises out of [Muh's] employment or the termination of [his] employment" and whether the arbitration provision applicable to registered employees is therefore also applicable.

The constitution and rules of a stock exchange constitute a contract between all members of the exchange with each other and with the exchange itself[.]

. . .

[. . .]

Since the rules of the Exchange "constitute a contract between the members, the arbitration provisions which they embody have contractual validity." . . . The Exchange provisions requiring arbitration constitute an agreement to arbitrate which is binding upon both [parties].

*Coenen v. R. W. Pressprich & Co.,* 453 F.2d 1209, 1211 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972), *quoting Brown v. Gilligan, Will & Co.,* 287 F.Supp. 766, 769–70 (S.D.N.Y.1968).

 It would seem strange indeed that with such a significant integrated method of dispute settlement one party could frustrate the purpose of the Exchange rules and the federal policy favoring arbitration by the mere expediency of resignation from the Exchange. It does not surprise us that we are not alone in holding that subsequent resignation does not vitiate the arbitration requirement. In *Isaacson v. Hayden, Stone, Inc.,* 319 F.Supp. 929 (S.D.N.Y.1970) a former allied member and officer of a brokerage firm which had been a member of the New York Stock Exchange sued to enforce an agreement to purchase his shares of stock. Although the agreement had been executed while both parties were members, the breach occurred after the plaintiff ceased to be a member and he argued that the arbitration provisions should therefore not be binding. The court rejected this argument. It held:

[T]he controversy flows from and is predicated upon the business relationship between the parties which arose during their mutual membership in the Exchange. If the obligation then undertaken by the defendant persists for the purpose of enforcement after termination of those memberships, it also persists as a membership obligation subject to the Constitution of the Exchange. *Osborne & Thurlow v. Hirsch & Co.,* 10 Misc.2d 225, 226, 172 N.Y.S.2d 522, 523 (S.Ct.N.Y. County 1958). The fact that the plaintiff commenced this action after he ceased to be a member of the Exchange does not impair or destroy the obligation to arbitrate his controversies with the defendant concerning their business relationship assumed by him while he was a member of the Exchange. *In re Sartorius,* 265 App. Div. 997, 39 N.Y.S.2d 996 (1st Dept.1943), aff'g Shientag, J. in 107 N.Y.L.J., 1385 (S.Ct.N.Y.County 1942).

319 F.Supp. at 930. We agree and hold that the parties in this case are bound by the arbitration agreement.[2]

 Nor can we conclude that arbitration is foreclosed by Section 229 of the California Labor Code,[3] which provides in part:

Actions . . . for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate.

Even if we assume that California law applies, we cannot conclude that the district court was in error in its implied finding that whatever compensation was due to Muh under the consulting agreement, it was not "wages" for purposes of section 229. Section 200(a) of the California Labor Code defines wages as "all amounts for labor performed by employees of every de-

---

**2.** We also reject Muh's claim that the parties freed themselves from the arbitration provisions by providing in the various written agreements that the writings constitute the "complete and exclusive" statement of terms. We think the district judge was correct in interpreting these clauses as not repudiating the applicable rules which the Exchange is statutorily bound to enforce. *See* 15 U.S.C. § 78f(b)(6) (Supp.1976).

**3.** The Supreme Court has held that the California statute is neither preempted by stock exchange rules requiring arbitration nor by the federal policy favoring self-regulation of the securities industry. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973).

scription, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." The district court impliedly found that the consulting services to be performed by Muh were not "labor," or that Muh was not an "employee" for purposes of this definition, or that the payments to Muh under the consulting agreement were not for services at all but were merely additional compensation for the sale of Muh's stock.

The remaining issues raised do not require specific response.

AFFIRMED.

ORRICK, District Judge (concurring):

I concur. I have no doubt that the agreement to arbitrate which existed by virtue of both parties' membership in the New York Stock Exchange at the time that the purchase and consultancy contracts were executed survived Muh's resignation and the withdrawal of Newburger, Loeb & Co., Inc. (Newburger) from the New York Stock Exchange. *See Bear v. Hayden, Stone, Inc.,* 526 F.2d 734 (9th Cir. 1975); *Isaacson v. Hayden, Stone, Inc.,* 319 F.Supp. 930 (S.D. N.Y.1970). I am also in accord that the agreement to arbitrate was not revoked by any "boilerplate" language in the various agreements executed by the parties to the transaction.

Moreover, assuming *arguendo* that California law applies, I reject Muh's contention that this suit for unpaid consulting fees is a dispute about wages which may be maintained under state law notwithstanding any private agreement to arbitrate. Cal.Labor Code § 229.

In *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 24 Cal.App.3d 35, 100 Cal. Rptr. 791 (1972), the California Court of Appeal determined that a suit by a former stock broker against his former employer concerning the entitlement of the plaintiff to payments from a profit-sharing plan could be maintained in state court regardless of any agreement to arbitrate. The defendant moved to stay the action pending arbitration, relying on the New York Stock Exchange rules requiring the arbitration of

disputes growing out of the termination of employment. The state court found that a valid agreement to arbitrate existed. However, while taking note of California's strong policy favoring arbitration, the court held that the action involved a dispute about "wages" within the meaning of Section 229 of the California Labor Code, and that the code section gave plaintiff a right to bring the action in state court despite any agreement to arbitrate.

This ruling was affirmed by the United States Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973). The Court noted that Section 229 of the Labor Code was enacted to protect wage earners from the potential exploitation of employers who might require a prospective employee to sign away in advance rights to resort to the judicial system for redress of an employment grievance. *Id.* at 131, 94 S.Ct. 383. The Court rejected the argument that allowing the state court action to proceed in the face of the Stock Exchange agreement to arbitrate contravened federal securities laws which preempted the field. The Court similarly rejected the contentions that the institution of the state court action violated the Supremacy Clause and constituted an unreasonable burden on interstate commerce.

Notwithstanding the broad definition of "wages" under state law, I am convinced that the plaintiff here is not within the intended class of beneficiaries of the state's statutory scheme to protect wage earners. Therefore, his reliance on *Ware* is misplaced.

Under the consulting agreement, Muh's entitlement to fees was to be entirely waived if he was paid the sums due to him under the stock purchase agreement through June, 1973. In effect, the consultancy contract functioned as a guarantee of the purchaser's obligations under the stock purchase agreement. Thus, this is not a case where an employee has performed labor for which he was not paid and turns to the courts to get his due. Accordingly, I

agree that arbitration is not foreclosed by Section 229 of the California Labor Code.