**Cheryl COUDERT, Appellant,**

v.

**PAINE WEBBER JACKSON & CURTIS, Appellee.**

**No. 754, Docket 82–7657.**

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1983.
Decided April 8, 1983.

Weis, Circuit Judge, sitting by designation, filed a dissenting opinion.

Alan Neigher, Westport, Conn., for appellant.

Louis B. Blumenfeld, Cooney, Scully & Dowling, Hartford, Conn., for appellee.

Before OAKES, PRATT and WEIS,* Circuit Judges.

OAKES, Circuit Judge:

This case involves the question whether a stock exchange rule requiring arbitration of disputes between a registered representative and her brokerage firm applies to her claims of tortious conduct on the part of the broker occurring after the termination of employment. The United States District Court, 543 F.Supp. 122, for the District of Connecticut, Robert C. Zampano, Judge, held that the rule applied and arbitration was required, as a matter of law, thereby dismissing Cheryl Coudert's complaint stating three claims against the defendant—defamation, invasion of privacy by placing plaintiff in a false light, and intentional infliction of emotional distress—for allegedly false statements made after she resigned from the firm. We reverse.

According to the plaintiff's complaint, she was employed by Paine Webber Jackson & Curtis (Paine Webber) as an account executive for eleven years, during which she established a clientele and good reputation as an investment advisor in the Fairfield, Connecticut, area. But in July 1981, after advising her office manager that she was unhappy with the lack of support given to representatives in her office, and, receiving

* Of the United States Court of Appeals for the     Third Circuit, sitting by designation.

no satisfaction or assurances, she sought and received an offer from Bache, Halsey, Stuart, Shields, Inc. to become a vice president at its Darien, Connecticut, office. On August 24, 1981, a Monday, she went to Paine Webber's Fairfield office to resign and discovered that the office manager had removed certain things from her desk during the preceding weekend. He asked her if she intended to change firms and upon her affirmative response, in which she stated that her resignation was to be effective immediately, he replied, "No, I am going to terminate you as of [the preceding] Friday" (August 21, 1981). The plaintiff's complaint goes on to allege that the office manager later told her former co-workers that she had been fired and had not resigned, told brokers at Paine Webber's Stamford office the same thing, suggested to her clients who called Paine Webber that "he had to do it," and intimated that she had left Paine Webber under clouded circumstances. Coudert further alleged that despite assurances by a senior vice president of Paine Webber that her permanent record would accurately reflect her voluntary resignation, the office manager nevertheless filed or caused to be filed termination forms with the Securities and Exchange Commission, the New York Stock Exchange and other exchanges, the National Association of Securities Dealers and various state securities departments that falsely stated that she was fired for cause.[1] The fact that these statements are alleged to be false and malicious and to have been made with reckless disregard of the truth gave rise to her defamation action. The statements are also said to have placed her in a false light before her customers and her professional colleagues by falsely portraying her as unfit to continue as an investment adviser, giving rise to the second cause of action. And making the same

communications to the investment community, including Coudert's professional colleagues and clients, is said to have been "extreme" and "outrageous" and to have been intended to cause and in fact did cause her severe emotional distress.

In response to the complaint Paine Webber filed a motion to stay the action pending arbitration under Rules 345, 347 and 481 of the New York Stock Exchange (NYSE), as well as a copy of the exchange letter approving Coudert for employment. The letter incorporates the rules of the exchange by reference and, perhaps, constitutes an employment contract. Principally, Paine Webber argues that NYSE Rule 347 is applicable to Coudert's claims. It states that:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration....

Plainly a controversy between a registered representative and a member organization exists here. The district court held that even though this suit is based on a series of acts allegedly committed by Paine Webber subsequent to Coudert's resignation, the controversy nevertheless arose "out of the employment or termination of employment" of Coudert. The court took the view that the underlying factual issues concern the plaintiff's professional competence and the reasons for her disassociation from Paine Webber, and treated this as falling under the arbitration clause, citing *O'Neel v. National Association of Securities Dealers, Inc.,* 667 F.2d 804, 806 (9th Cir.1982); *Muh v. Newburger, Loeb & Co.,* 540 F.2d 970, 972–73 (9th Cir.1976); *Isaacson v. Hayden, Stone Inc.,* 319 F.Supp. 929, 930 (S.D.N.Y. 1970).

---

1. Included in the joint appendix are two "U–5" forms, termination notices sent by Paine Webber presumably to the New York Stock Exchange and others as mentioned in the text. The first, dated 8/28/81, contains an X in the box marked "discharged." The second, dated 10/12/81, contains an X in the box marked "voluntary." Appellee says that the first, while

alleged in the complaint (¶ 13) and "not disputed by the defendant," was not part of the file before the district court. Since it is to the allegations in the complaint that we must look in any event, in this posture of the case, the point appellee makes, however correct, is irrelevant.

## DISCUSSION

We start with some propositions that are so basic as to amount to truisms in the present state of the law. They are mentioned in this opinion only to demonstrate that they have not been overlooked. First, arbitration agreements are favored in the law and are to be broadly construed. An order to arbitrate should not be denied unless it can be said that the arbitration clause is not susceptible of a reasonable interpretation covering the asserted dispute. In short, doubts should be resolved in favor of coverage. *United Steelworkers of America v. Warrior & Gulf Navigation,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). Second, the securities industry is to some extent unique because self-regulation by registered exchanges is based upon statute. 15 U.S.C. §§ 78f, 78s. *Compare Silver v. New York Stock Exchange,* 373 U.S. 341, 349–57, 83 S.Ct. 1246, 1252–1257, 10 L.Ed.2d 389 (1963) (exchange self-regulation designed to curb securities abuses), *with Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 135–36, 94 S.Ct. 383, 393–394, 38 L.Ed.2d 348 (1973) (state law not preempted when Rule 347(b) arbitration does not promote self-policing of securities abuses by exchanges). As we held in *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1211 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972), since the constitution and rules of the stock exchange constitute a contract between the members of the exchange with each other and with the exchange, the arbitration provisions included in those rules have "contractual validity," constituting an agreement to arbitrate binding at least on the attorning parties. *Compare Laupheimer v. McDonnell & Co.,* 500 F.2d 21, 25 (2d Cir.1974) (distinguishing *Coenen* where dispute with employer a result of employer's fraud). Here there is no question but that Coudert, in applying to the exchange to become a registered representative, was familiar with the rules requiring arbitration and assented to them. The cases are clear that as to disputes relating to employment, the arbitration provisions survive employment termination even by way of resigna-

tion. *O'Neel v. National Association of Securities Dealers, Inc.,* 667 F.2d at 806–07; *Muh v. Newburger, Loeb & Co.,* 540 F.2d at 973. Moreover, they survive a claim of wrongful termination, so that arbitration of a claim of wrongful termination must be had. *See, e.g., Drayer v. Krasner,* 572 F.2d 348 (2d Cir.) *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978).

On the other hand, a party cannot be required to submit to arbitration any disputes which he has not agreed to submit. *United Steelworkers,* 363 U.S. at 582, 80 S.Ct. at 1352. NYSE Rule 347 was "primarily designed" to cover disputes regarding the rights and duties of registered representatives and exchange members as employers and employees. *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532, 535 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). Thus NYSE Rule 347 does not apply to require arbitration of a dispute arising out of the sale of the broker's own common stock to the employee. *Id.* Similarly, following voluntary termination of employment an issue whether the registered representative forfeited profit sharing benefits under the broker's profit sharing plan, turning on a California statute giving wage earners a right of action, was held not arbitrable. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. at 134–136, 94 S.Ct. at 393–394. And it is the general law of this circuit that there is no duty to arbitrate a grievance arising after the termination of the agreement between the parties, even if the expired agreement included an arbitration clause. *Korody Marine Corp. v. Minerals & Chemicals Philipp Corp.,* 300 F.2d 124, 125 (2d Cir.1962) (per curiam). Thus only grievances based on conditions arising *"during the term of the agreement to arbitrate"* are arbitrable after the term has ended. *Procter & Gamble Independent Union of Port Ivory v. Procter & Gamble Manufacturing Co.,* 312 F.2d 181, 186 (2d Cir.1962) (emphasis in original), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963).

■ In the present state of the record we must look to the complaint to determine whether this dispute pertains either to employment or termination, or whether it simply alleges tortious conduct arising after termination. The complaint plainly alleges that Coudert had voluntarily resigned before the alleged false statements were made to co-workers, customers, and various securities exchanges and organizations, and it is a short road from here to the conclusion that this controversy is not controlled by an arbitration clause that governs only employment or termination. Paine Webber would have us hold that as a matter of law the present claims "aris[e] out of" the termination of employment of the plaintiff. Certainly they concern such termination in the limited sense that each of the three grounds for relief stated by Coudert in her complaint rests on statements suggesting that she was discharged for cause rather than that she resigned.

But this is not what NYSE Rule 347 addresses either under the case law we have above cited or under its precise language, "arising out of termination." She is not claiming that she was wrongfully terminated as the plaintiff did in *Drayer v. Krasner, supra.* She is not seeking employment benefits accruing because of her employment, which are arbitrable even after resignation. *E.g., Muh v. Newburger, Loeb & Co., supra; O'Neel v. National Association of Security Dealers, Inc., supra.* Rather, the dispute itself does not pertain to employment or termination of employment; the tortious acts are all claimed to have occurred after such termination. The claim here made is similar in principle to that in *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union No. 584,* 359 F.2d 598 (2d Cir.1966), where the court held that an employer was not precluded by the arbitration clause of a collective bargaining agreement from asserting claims against a union for tort damages based on alleged unlawful secondary activity of the union. It is also similar to the slander claim made by a concert promoter against a performer arising out of statements to the audience at the concert that were held not to be arbitrable

under the arbitration clause in the performer's services contract in *Fuller v. Guthrie,* 565 F.2d 259 (2d Cir.1977).

We hold, then, that the motion to stay must be denied and the dismissal of the complaint reversed.

Judgment reversed.

WEIS, Circuit Judge, dissenting.

The question here is whether the controversy between the plaintiff and her former employer is one "arising out of the employment or termination of employment," and is therefore arbitrable. The district court found that it was and I agree. Therefore, I dissent.

One specific matter in dispute is whether the defendant was correct in stating to other employees that the plaintiff was "fired." She contends the statement was false because she "resigned." This disagreement over the circumstances of the plaintiff's departure applies as well to the required notifications that the defendant submitted to various securities exchanges and governmental agencies. The plaintiff's complaint also alleges that the defendant informed some of her clients that her "departure from Paine Webber is unfortunate," and intimated that the termination was for cause.

Although these communications took place after the plaintiff's termination, the district court found that the "underlying factual issues concern the plaintiff's professional competence and the reasons for her disassociation from Paine Webber. Obviously the evidence will involve to a substantial degree matters which arose during the course of her employment and which reflect directly on the employer-employee relationship . . . ."

The majority takes the position that the controversy did not "arise out of" the employment relationship because the challenged communications occurred after the plaintiff's employment had ceased. The district court, however, reasoned that the controversy "flows from and is predicated upon" the employment and its termination, and therefore arbitration was required.

The meaning of "arising out of" is not always self-evident. To a large extent, the proper interpretation depends on the specific situation presented. Thus, policy considerations often determine whether "arising out of" should be given a strict or liberal interpretation.

As the majority concedes, arbitration agreements are favored in the law and are to be broadly construed. The *Steelworkers* trilogy,[1] teaches that all doubts should be resolved in favor of coverage. The Supreme Court repeated that admonition in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, ——, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and advocated "a healthy regard for the federal policy favoring arbitration." This policy is further reflected in the United States Arbitration Act, 9 U.S.C. §§ 1–14 (1976), which declares that a written agreement for arbitration in a "contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable." *Id.* § 2.

The ever-mounting caseload in the courts has lead to increasing discussion of alternative means of dispute resolution, particularly arbitration. The Pound Conference of 1976 advocated an expanded use of arbitration[2] and the organized bar has joined in the call through the work of various committees.[3]

To be sure, none of these factors would justify a court in directing contractual arbitration where the parties had not agreed to that procedure. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. at 582, 80 S.Ct. at 1352. If a contract is fairly susceptible of differing meanings, however, it is clear that the courts are to adopt the interpretation that requires arbitration.

The policy favoring arbitration is not diminished because this agreement comes under the regulations of the New York Stock Exchange. That much is obvious from this court's opinion in *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209 (2d Cir.1972). There we acknowledged that the drafters of an Exchange arbitration clause "intended it to be very broad" and designed it to keep disputes between members out of the courts as much as possible. *See also O'Neel v. National Association of Securities Dealers, Inc.,* 667 F.2d 804 (9th Cir.1982); *Muh v. Newburger, Loeb & Co., Inc.,* 540 F.2d 970 (9th Cir.1976).

In *Drayer v. Krasner,* 572 F.2d 348, 358 (2d Cir.), *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978), Judge Friendly discussed Exchange Rule 347(b) at some length, and found no incongruity in the arbitration of disputes between members of the Exchange and their employees. There have been some exceptions in clearly defined situations. The case at bar, how-

---

**1.** *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**2.** The Pound Conference focused on the effectiveness of the American judicial system. The major addresses delivered at the conference are reprinted at 70 F.R.D. 83 (1976). *See, e.g.,* Burger, *Agenda for 2000 A.D.—A Need for Systematic Anticipation,* 70 F.R.D. 83 (1976). Special emphasis was placed on alternative, non-judicial means of dispute resolution. *See* Sanders, *Varieties of Dispute Processing,* 70 F.R.D. 111 (1976). Encouragement of new mechanisms for the delivery of justice, including an increased use of arbitration, emerged as one of the principle recommendations of the

conference. *See Report of the Pound Conference Follow-Up Task Force,* 74 F.R.D. 159 (1976); Erickson, *The Pound Conference Recommendations: A Blueprint for the Justice System in the Twenty-first Century,* 76 F.R.D. 277 (1978); Bell, *The Pound Conference Follow-Up: A Response from the United States Department of Justice,* 76 F.R.D. 320 (1978).

**3.** The American Bar Association committees include the ABA Action Committee to Reduce Court Costs and Delay, the Special Committee on Resolution of Minor Disputes, and the Special Committee on Alternative Means of Dispute Resolution.

The Chief Justice has also been active in calling for an enlargement of alternative means of dispute resolution. *See, e.g.,* Burger, *Isn't There a Better Way?* 68 A.B.A.J. 274 (March 1983).

ever, does not raise the question of preemption by state employee relations law, as in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973), or present the situation in *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976), where the dispute centered on the employee's investments and not his employment status.

The dispute here is a simple defamation case and poses no unusual issues. The plaintiff's contention that the matter should not be arbitrated because it is a tort case has no validity and requires no extended discussion. Hundreds of personal injury claims are arbitrated every day under the uninsured motorist provisions of standard automobile insurance policies. *See also* 16 W. Jaeger, Williston on Contracts, § 1918 at 13 (1976) ("Claims arising out of torts and nuisances may be submitted to arbitration.")[4]

The conduct the plaintiff complains about was precipitated by the termination of her employment. The notifications to the various stock exchanges and governmental agencies were part of the termination process, and the explanations to the plaintiff's customers were expected concomitants to severance of the parties' relationship. That the plaintiff found the contents of the communications to be offensive does not isolate them from the termination process.

Nor is the dispute removed from the scope of the arbitration rule by the fact that the communications occurred after the plaintiff's last day of work for the defendant. In *Stokes v. Merrill Lynch, Pierce, Fenner & Smith,* 523 F.2d 433 (6th Cir.

1975), account executives who had resigned from a brokerage firm sued to recover profit sharing units which became vested and payable upon severance of employment. The court directed that the controversy be arbitrated pursuant to New York Stock Exchange Rule 347(b). In that case, the defendant's conduct in withholding the severance benefits occurred after the last day of employment. Indeed, the benefits did not become due until severance. Nevertheless, the court of appeals had no difficulty in concluding that the dispute arose out of the "termination of employment."

The same generous construction given to the subject matter of arbitration agreements should apply as well to their temporal limitations. In *Nolde Brothers, Inc. v. Local 358, Bakery and Confectionary Workers Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the Supreme Court held that the parties were required to arbitrate a dispute that arose under the contract but centered on matters that took place after the expiration of a collective bargaining agreement. The Court observed that nothing in the arbitration clause "expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination. . . . In the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to be terminated automatically with the contract." *Id.* at 253, 97 S.Ct. at 1073. Similarly, in *John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Court upheld the arbitrability of claims arising after the underlying agreement had expired by its terms.[5]

---

4. Among the plaintiff's claims submitted to arbitration in *Drayer v. Krasner* was one that the employer had "falsely represented to NYSE and others that [plaintiff] had been terminated for violation of NYSE Rule 405(1)," and the recovery sought "included damages for loss of clientele." 572 F.2d at 350.

5. *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union No. 587,* 359 F.2d 598 (2d Cir.1966), and *Fuller v. Guthrie,* 565 F.2d 259 (2d Cir.1977), are not contrary to my

position. Those cases construed the disputes to be outside the scope of the arbitration agreements.

Moreover, an additional factor present here is that the plaintiff is presently employed by another member of the New York Stock Exchange. The plaintiff has chosen to continue in the field and thus continues to be bound by the arbitration rule, at least with respect to her present employer. The plaintiff has arguably waived her right to object to arbitration about events which occurred after she ceased work-

The arbitration clause in this case is broad in scope. It is intended to cover disputes that are related to termination of employment. The controversy at hand is of the type which often accompanies such an event. I see no need to hedge in the application of arbitration to this case. Under any but the most restrictive interpretation, the dispute should be arbitrated. The liberal standard which the court should apply here compels that result.

I would affirm the order of the district court.

ing for one member of the Exchange, but was working for another.

