574 F.Supp. 1472 (1983)
MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,
v.
Scott P. THOMSON, and Roger A. Provow, Defendants.
MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,
v.
George B. POPE, III, Defendant.
Nos. 83-2323-C(4), 83-2358-C(4).
United States District Court, E.D. Missouri, E.D.
October 27, 1983.
*1473 John J. Cole, Edwin L. Noel, Catherine D. Perry, St. Louis, Mo., for plaintiff; Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., of counsel.
Peper, Martin, Jensen, Maichel, & Hetlage by William A. Richter, Lewis R. Mills, Audrey G. Fleissig, St. Louis, Mo., for defendants.

MEMORANDUM
CAHILL, District Judge.
Plaintiff, Merrill, Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), seeks an injunction against Scott Thomson, Roger Provow, and George B. Pope III, three of its former employees who are the defendants in this lawsuit. Merrill Lynch's complaint alleges that the defendants were once employed by Merrill Lynch as account executives but that they resigned from Merrill Lynch to join Smith, Barney, Harris, Upham & Company (Smith Barney), a rival investment firm that competes directly against Merrill Lynch. The complaint also alleges that prior to the termination of defendants' employment with Merrill Lynch, defendants obtained and removed confidential information concerning Merrill Lynch's clients from Merrill Lynch's business premises. Additionally, the complaint alleges that defendants have used this confidential information to solicit Merrill Lynch customers in an attempt to have those customers switch their investment accounts from Merrill Lynch to Smith Barney. Further, the complaint alleges that such activity violates the defendants' employment contracts with Merrill Lynch. Those contracts provide:
1. All records of Merrill Lynch including names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copy form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business at Merrill Lynch.
2. In the event of termination of my services with Merrill Lynch for any reason I will not solicit any of the clients of Merrill Lynch whom I serve or whose names became known to me while in the employ of Merrill Lynch in any community or city served by the office of Merrill Lynch or any subsidiary thereof, at which I was employed at any time for a period of one year from the date of termination of my employment. In the event that any of the provisions contained in this paragraph and/or paragraph (1) above are violated I understand that I will be liable to Merrill Lynch for any damage caused thereby.
Merrill Lynch thus prays for an injunction against defendants to prevent them from further use of the confidential information and any further solicitation of Merrill Lynch customers.
Defendants' response is that their employment contracts and ancillary agreements with Merrill Lynch provide for arbitration of the subject matter of Merrill Lynch's complaint. Thus, defendants have *1474 moved this Court to compel arbitration and to stay these proceedings pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14 (1976).

I. ARBITRATION.
The Arbitration Act evinces a strong federal policy in favor of arbitration. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., ___ U.S. ___, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); In re Hart Ski Manufacturing Company, 711 F.2d 845, 846 (8th Cir.1983). Congress passed the Arbitration Act to ensure that parties to an interstate arbitration agreement proceed promptly to arbitration without any delay or interference by the courts. Moses H. Cone, 103 S.Ct. at 940; H.Rep. 96, 68th Cong., 1st Sess. 2 (1924). Therefore, once a party to an interstate contract moves for a stay of proceedings pursuant to the Arbitration Act, the Court must direct and limit its inquiry to two issues:
(1) whether an express written agreement to arbitrate the subject matter of the present dispute exists between the parties, and
(2) if so, whether the agreement to arbitrate has been breached.
Contracting Northwest, Inc. v. City of Fredericksburg, 713 F.2d 382, 384-85 (8th Cir.1983), quoting Johnson Controls, Inc. v. City of Cedar Rapids, 713 F.2d 370, 373 (8th Cir.1983). In addressing these issues, the Court must read the putative arbitration agreement liberally and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability." Moses H. Cone, 103 S.Ct. at 941-42 & n. 27. The Court has held a hearing on defendants' motions to compel arbitration and to stay these proceedings during which the following evidence was adduced.[1]

A. Existence of an Arbitration Agreement.

As a condition of their employment with Merrill Lynch, defendants Thomson, Pope, and Provow signed a document known as a "U-4 Form." The U-4 form is a part of an application to become a registered representative of a member of the New York Stock Exchange (NYSE). The NYSE requires that both the applicant (here Thomson, Pope, and Provow) and the sponsoring NYSE member (here Merrill Lynch) sign the U-4 form. Although the U-4 forms submitted into evidence are not signed, the Court is satisfied that the parties followed this practice in the present case. The U-4 form contains an arbitration clause that reads:
(i) I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the constitution and rules then obtaining of the New York Stock Exchange, Inc.[2]
In addition to the U-4 form, NYSE Rule 347 states:
Any controversy between a registered representative and any member or member organization arising out of the employment *1475 or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party in accordance with the arbitration procedure prescribed elsewhere in these rules.
Merrill Lynch, as a member of the New York Stock Exchange, and Thomson and Provow, as NYSE registered representatives, have agreed to conform their conduct in accordance with NYSE rules, including Rule 347. Under the NYSE rules, Merrill Lynch could not employ Thomson or Provow as registered representatives without adhering to Rule 347 or signing the U-4 forms. Likewise, neither Thomson or Provow could work for Merrill Lynch as registered representatives without adhering to Rule 347 or signing the U-4 forms. Therefore, Rule 347 and the identical clause in the U-4 form are integral components of the employment contract between Merrill Lynch and the defendants.[3]See Coenen v. Pressprich, 453 F.2d 1209, 1211-12 (2d Cir.), cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); Dickstein v. duPont, 443 F.2d 783, 785 (1st Cir.1971); Fox v. Merrill Lynch and Company, Inc., 453 F.Supp. 561, 563-64 (S.D.N.Y.1978). Moreover, the Court finds that these employment contracts are contracts "evidencing a transaction involving commerce" within the meaning of the Arbitration Act, 9 U.S.C. § 2. See Shearson, Hayden, Stone v. Liang, 493 F.Supp. 104, 106 (N.D. Ill.1980), aff'd 653 F.2d 310 (7th Cir.1981).
Finding that there is an arbitration agreement in an interstate contract, the Court must next decide whether the subject matter of the present dispute is within the scope of that arbitration agreement.

B. Arbitrability.

All the documents which constitute the arbitration agreement between the parties contain substantially the same language regarding what disputes are subject to arbitration. They state that "any controversy ... arising out of the employment or termination of employment ... shall be settled by arbitration." See NYSE Rule 347. Merrill Lynch has argued vigorously that the phrase "arising out of" is a temporal phrase that restricts arbitration to contract violations that occurred during the term of employment or its termination. Plaintiff asserts that the solicitation by the defendants which it now seeks to enjoin occurred after they submitted their resignations and left Merrill Lynch. Thus, plaintiff contends that the present controversy is non-arbitrable.
Plaintiff's argument is unpersuasive in light of the evidence, the intent of the parties, and a plain reading of the arbitration clause. The Court finds that the contractual phrase "arising out of the employment or termination of employment ..." refers to the employment relationship between the parties. The question to be asked is not when did the acts complained about occur, but rather where do the rights and obligations which control the resolution of the dispute arise. One may ask what gives Merrill Lynch the right to say defendants cannot continue to solicit the customers they are presently soliciting. According to Merrill Lynch's complaint, it is because defendants were employed by Merrill Lynch and, as a condition of that employment, defendants had to agree not to compete with Merrill Lynch for a year after they terminated their employment relationship with Merrill Lynch. Merrill Lynch's cause of action is premised on the existence of a non-compete clause in defendant's employment contract and the fact that defendants' employment with Merrill Lynch has been terminated. Thus the present controversy, on a common-sense level, "arises out of the employment or termination of employment" of defendants by Merrill Lynch. This construction is also supported by the purpose NYSE Rule 347 and the U-4 form requirement serves. The policy behind NYSE Rule 347 and the U-4 form is that disputes between members of the Exchange and their employees relating to the *1476 conduct of Exchange business should be handled "inhouse" where they may be resolved expeditiously by experts in the field. See Coenen, 453 F.2d at 1212. The problem of stockbrokers soliciting former clients is endemic to the stockbrokering industry. NYSE arbitrators have arbitrated many of these disputes. They are more familiar with industry custom and practice and they possess expertise in these matters that the courts lack. For these reasons also, the term "arising out of" must be interpreted to refer to the nature of the controversy, not when the acts complained about occurred. If Merrill Lynch's argument was adopted, a traffic accident between an off-duty stock broker employed by Merrill Lynch and an on-duty Merrill Lynch employee would have to be arbitrated before the NYSE under Rule 347. Such a result does not reflect the intention of the parties nor does it further any policy behind Rule 347 and the U-4 form.
Lastly, the relationship interpretation is supported by the weight of authority. Although there are no reported decisions directly on point, the parties have submitted copies of numerous unreported decisions dealing with the precise facts presented in this case. All but two of these cases found that the solicitation controversy to be arbitrable under NYSE Rule 347 or other similar contractual language. The two cases that decided that a solicitation controversy is not arbitrable under NYSE Rule 347 are: Wichmann v. Merrill Lynch, No. 83-115, (D.N.D. Sept. 9, 1983) appeal pending No. 83-2231 (8th Cir.); and Downing v. Merrill Lynch, No. 83-Civ-4312 (S.D.N.Y. Aug. 18, 1983), appeal pending, No. 83-7710 (2d Cir.).
Downing was the first decision to apparently hold that the propriety of post-termination solicitation was not arbitrable under NYSE Rule 347. The opinion is rather confusing, however, and it is difficult to ascertain what is the precise holding of the case because the court states so many alternative holdings. The Downing case reached the court in a peculiar procedural posture. It was Downing, the former Merrill Lynch employee, who instituted the lawsuit as a declaratory action in an effort to enjoin Merrill Lynch from filing a lawsuit against him for solicitation violations. At the time the court ruled, Merrill Lynch had not sued Downing, Downing had not demanded arbitration from Merrill Lynch, and Merrill Lynch had not yet refused to arbitrate. Therefore, the Downing court ruled that because no controversy existed between Merrill Lynch and Downing, Merrill Lynch had not yet breached any agreement to arbitrate disputes against Downing. The Downing court did go on to say that even if there was an agreement to arbitrate, the court "would still have to conclude that it was not intended to apply to this situation," citing Coudert v. Paine, Webber, Jackson & Curtis, 705 F.2d 78 (2d Cir.1983). Downing, mem. op. at 4-5. The Downing court reasoned that it was bound by the Coudert case and if the facts of Coudert were not arbitrable, the facts of the Downing case were not arbitrable. Yet the Downing court concluded its opinion by stating that if Downing was eventually sued by Merrill Lynch, Downing could at that time adequately protect his interests "by obtaining a stay of litigation pending arbitration (if, in fact, he is entitled to such), pursuant to Section 3 of the Act, 9 U.S.C. § 3 (1982). Downing, mem. op. at 10. The import of this ruling is unclear, but apparently the Downing opinion left open the question whether post-termination solicitation is arbitrable under 9 U.S.C. § 3 if the employer institutes the lawsuit against the former employee. Moreover, this Court believes that the Downing opinion's reliance on Coudert was misplaced.
The Coudert holding and reasoning are easily distinguished from the present case. In Coudert, the subject matter of the controversy was defamation. The plaintiff, Cheryl Coudert, was an account executive with defendant Payne Webber. When she submitted her resignation to a Payne Webber officer, the officer told Coudert that she was fired effective the preceding Friday. According to Coudert, the officer then told co-workers and clients that he had to fire Coudert because she was unfit to be an account executive. The rights and *1477 obligations relied upon by Coudert to prosecute her defamation cause of action arose solely from the law of torts and not from the parties' employment contract. Whether the facts of the controversy occurred because Coudert was once employed by Payne Webber would be immaterial in resolving the controversy because her cause of action was not dependent upon the existence of that relationship. In this case, however, the nature and terms of defendants' employment contracts are essential to the resolution of the present controversy. As the Third Circuit ruled in Ayres v. Merrill Lynch, 538 F.2d 532, 535 (3d Cir.), cert. denied, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976):
All the cases that have applied Exchange Rule 347(b) concern the terms of the consensual relationship between registered representatives and Exchange members and the respective rights and duties of the parties as employer and employee ... we believe the Rule was primarily designed to cover such disputes....
In Coudert, the controversy's remote causal connection to the fact of employment did not implicate any right or duty of the parties as employer and employee that was based on the terms of an employment contract. Id. In the present case, however, the right Merrill Lynch invokes to enjoin defendants is taken directly from the terms of the parties' consensual employment contracts. As such, the present controversy, unlike the Coudert controversy, "arises out of the employment or termination of employment" of the defendants.
Insofar as the dicta in the Coudert opinion cannot be distinguished from the facts of this case, this Court chooses not to rely upon it. In reaching its holding, the Coudert court stated as a general proposition of Second Circuit law that "only grievances based on conditions arising `during the term of the agreement to arbitrate' are arbitrable after the term has ended." 705 F.2d at 81 (emphasis in original). Merrill Lynch has relied heavily on this passage to support its interpretation of the arbitration clause. However, Merrill Lynch's arbitration agreement with the defendants does not read: "during the term of the agreement to arbitrate," rather it reads: "arising out of the employment or termination of employment." This Court will not rewrite the parties' contracts to conform to the "during the term" contract language interpreted in the cases cited by Coudert as authority for this proposition. See Procter & Gamble Independent Union of Port Ivory v. Procter & Gamble Manufacturing Company, 312 F.2d 181, 185 n. 4 (2d Cir.1962). The Coudert opinion also cited Merrill Lynch v. Ware, 414 U.S. 117, 134-36, 94 S.Ct. 383, 393-94, 38 L.Ed.2d 348 (1973), as authority for the dicta cited by Merrill Lynch. The Ware case, however, did not involve the Arbitration Act. In fact, the Supreme Court stated in a footnote that had the case arisen under a federal act that provided for arbitration, such as the Arbitration Act, the situation would be quite different. 414 U.S. at 135 n. 15, 94 S.Ct. at 393 n. 15. Additionally, the Coudert dicta represents a rather narrow reading of the arbitration clause at issue in that case. This is in contravention of the Supreme Court's recent admonition in Moses H. Cone that arbitration agreements subject to the Arbitration Act must be given a liberal reading and that all doubts should be resolved in favor of arbitration.
In Wichmann, the facts of which are almost identical to the facts of the present case, the court held that this type of solicitation dispute is not arbitrable within the scope of Rule 347. A decision of a brethren federal district court judge within the Eighth Circuit carries with it a great deal of persuasive effect. However, the Wichmann decision relied primarily on the opinions in Downing and Coudert. For the reasons discussed above, it is this Court's opinion that Downing and Coudert do not state the more reasoned result and should not be followed in this case. Thus, the Court respectfully disagrees with the Wichmann opinion and holds that the contractual language between the parties "arising out of the employment or termination of employment" encompasses the subject matter of the present controversy. Therefore, the Court grants defendants' *1478 motion to compel arbitration and stays the proceedings pending that arbitration.[4]

C. Injunction Pending Arbitration.

Merrill Lynch argues that this Court should at least enjoin defendants from continuing to violate their employment contracts while arbitration proceeds. Merrill Lynch asserts that without an injunction pending arbitration it will be left without an adequate remedy at law and will be irreparably harmed. Further, Merrill Lynch argues that nothing in the Arbitration Act prohibits a court from issuing such an injunction as an exercise of the court's equity powers.
This issue is an interesting one and its resolution is more difficult than the issue of arbitrability. However, recent United States Supreme Court and Eighth Circuit precedents convince the Court that once a determination is made that a controversy is arbitrable under the Arbitration Act, the Court cannot do anything further on the merits save compel arbitration and stay the proceedings pending arbitration.
As an initial matter, it must be emphasized that the Arbitration Act's stay clause is stated in mandatory terms. It provides that if the court is satisfied that the dispute is referable to arbitration, "the court ... shall, on the application of one of the parties, stay the trial of the action until such arbitration has been had...." 9 U.S.C. § 3 (emphasis added). Thus, once a stay under Section 3 is issued, the court cannot concern itself with the merits of the dispute until arbitration has been had. Issuing an injunction, even a preliminary injunction, would require a time consuming exploration of the merits. To allow such a delay would violate not only "the plain meaning of the statute but also the unmistakably clear Congressional purpose that the arbitration procedure, once started by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). These sentiments were echoed recently by the United States Supreme Court in the Moses H. Cone case in which a district court stayed ruling on a party's motion to compel arbitration because a similar action was proceeding in the state court. The Supreme Court held that:
This refusal to proceed was plainly erroneous in view of Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.... [The Arbitration Act calls] for an expeditious and summary hearing, with only restricted inquiry into factual issues.... The [district court's] stay thus frustrated, the statutory policy of rapid and unobstructed enforcement of arbitration agreements.
Moses H. Cone, 103 S.Ct. at 940-41.
Proceeding on Merrill Lynch's preliminary injunction motion would deeply involve the Court in the factual issues of the case. Such involvement would deny the party seeking arbitration the benefit of its bargain, which is to have the controversy resolved by arbitrators. Even though at this stage of the proceedings granting a preliminary injunction pending arbitration would not involve inordinate delay, it would establish a precedent that would eviscerate the policy of the Arbitration Act. To provide an avenue for injunctive relief in the district courts, even though the subject matter of the case is arbitrable under the *1479 Arbitration Act, will add yet another weapon in a litigant's arsenal of delaying tactics. Thus, even if a recalcitrant party knows its dispute is subject to arbitration under the Arbitration Act, it will file a motion for a preliminary injunction in federal district court in an attempt to delay arbitration and divert its opponent's attention and resources away from expeditiously presenting the substance of the controversy to the arbitrators. It would also result in a duplication of effort. The Arbitration Act presupposes a dispositive adjudication by arbitrators rather than the courts. Therefore, the parties should direct their efforts towards presenting the merits of their dispute to the arbitrator rather than diverting their energies and resources to prosecuting and defending a preliminary injunction motion in a district court. See Automotive, Petroleum & Allied Industries Employees Union, Local 618 v. Town & Country Ford, Inc., 709 F.2d 509 at 511 (8th Cir. 1983). Adding a second level of adjudication in the courts is improper, unnecessary, and wasteful.
The Tenth Circuit was recently faced with this issue and resolved it against entertaining any preliminary injunctive relief pending arbitration. See Merrill Lynch v. Scott, No. 83-1480 (Tenth Cir. May 12, 1983). In Scott, Merrill Lynch had moved for a preliminary injunction against its former employee David Scott. After the proceedings in the district court on Merrill Lynch's preliminary injunction motion were well under way, Scott filed a motion to compel arbitration and to stay the preliminary injunction proceedings pending arbitration. The district court ruled that the controversy was arbitrable under the Arbitration Act and stayed the proceedings pending arbitration. The district court, however, also issued a preliminary injunction in favor of Merrill Lynch pending arbitration. The district court reasoned that, although a stay under the Arbitration Act was mandatory, the stay pending arbitration should not extend to the district court's preliminary injunction because Scott had delayed seeking arbitration until the injunction proceedings were well underway. The Tenth Circuit in a one page summary order reversed the district court's order granting the preliminary injunction pending arbitration. The Tenth Circuit ordered that the proceedings, including the preliminary injunction, be stayed pending arbitration and remanded the case to the district court for further proceedings consistent with its order. The same result will be followed in this case.
After this Court issued its initial ruling staying the proceedings pending arbitration, Merrill Lynch filed a motion to alter or amend the Court's ruling. Merrill Lynch now moves the Court to order the arbitrators to bifurcate Merrill Lynch's claims for injunctive relief from Merrill Lynch's claims for damages and rule upon the claims for injunctive relief on an expedited basis before proceeding on Merrill Lynch's claims for damages. Merrill Lynch asserts it seeks this relief because without it Merrill Lynch will be without an adequate remedy at law to prevent defendants from further damaging Merrill Lynch's interests.
The Supreme Court and Eighth Circuit cases cited earlier in this opinion which discuss the federal courts' limited role in arbitration motions under the Arbitration Act, have equal application to Merrill Lynch's motion to amend. Merrill Lynch should be raising these arguments before the NYSE arbitrators, and not this Court. If it is possible to get a preliminary injunction from the arbitrators under the NYSE arbitration rules and the arbitrators deem a preliminary injunction to be appropriate in this case, the arbitrator's award of a preliminary injunction is specifically enforceable in this court. 9 U.S.C. § 9. But it should not concern any court what relief a party may receive from the arbitrator. Having voluntarily bargained for an arbitration of this dispute, Merrill Lynch will not be heard to say that it is without an adequate remedy at law. The law gives Merrill Lynch the very remedy for which it contracted: arbitration under the arbitration rules of the New York Stock Exchange. This Court will not redraft or modify the parties' arbitration agreement by delineating the procedure under which *1480 arbitration shall be had. The arbitration agreement drafted by Merrill Lynch speaks for itself,
Accordingly,
IT IS HEREBY ORDERED that Merrill Lynch's motion to amend the Court's October 21, 1983, Order compelling expedited arbitration and a stay pending arbitration is DENIED.

ORDER
Defendant George B. Pope, III has moved the Court to transfer the above-styled cause No. 83-2358-C(3) to this Court under Local Rule 7 F. The legal issues and relevant facts of the Pope lawsuit are identical to the legal issues and relevant facts in Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Thomson, No. 83-2323-C(4). This Court has recently issued a short order and memorandum in the Thomson case and presently has before it a motion to amend and alter that order. In the interest of judicial efficiency and conservation of judicial resources, the Pope case has been transferred to this Court and consolidated with the Thomson case. The pleadings filed in the Pope case will be considered as addendums and additional support for the motion to amend this Court's Order in the Thomson case. Upon careful consideration of Merrill Lynch's arguments both in the motion to amend in the Thomson case and in its pleadings in the Pope case, this Court will deny the motion to amend or alter its original Order in the Thomson case. A fuller explanation of the Court's findings of fact and conclusions of law in this matter will be filed in the consolidated case presently. Accordingly,
IT IS HEREBY ORDERED that the cause in Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. George B. Pope, III, No. 83-2358-C(3) is transferred to this Court and consolidated with the cause in Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Thomson, No. 83-2323-C(4).
IT IS FURTHER ORDERED that
(1) Merrill Lynch's motion to amend this Court's Order and memorandum of October 21, 1983, in Merrill, Lynch v. Thomson, No. 83-2323-C(4), is DENIED;
(2) All proceedings in this case, including proceedings on Merrill Lynch's preliminary injunction, are STAYED PENDING ARBITRATION;
(3) The parties seek an early setting for arbitration before the New York Stock Exchange arbitration department and proceed with arbitration on an expedited basis. The Court will retain jurisdiction of this action pending arbitration, and if arbitration is not commenced within thirty (30) days from the date of this Order, the parties may reapply to this Court for injunctive relief. See Coffield v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., unpublished order at 1, LR-C-83 231 (E.D.Ark. Apr. 13, 1983).
NOTES
[1] The hearing was actually held in the case of Merrill, Lynch v. Thomson, No. 83-2323-C(4) before the Pope lawsuit was transferred and consolidated with the Thomson case. However, the parties have represented to the Court that the evidence in the Pope case would in all material respects be identical to the evidence concerning Scott Thomson.
[2] The above language is contained in an older version of the U-4 form. A newer version of the U-4 form contains the following pertinent language: "5. I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm or a customer or any other person that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register as indicated in question 8." See Exhibit 5, p. 2. New York Stock Exchange Rule 347, as discussed infra, provides for arbitration of controversies substantially similar to those made arbitrable under the older U-4 form arbitration clause. Thus, for present purposes, it is immaterial which version of the U-4 form the parties actually signed.
[3] In addition to NYSE Rule 347 and the U-4 form, Roger Provow's Account Executive Agreement, signed by Provow and Merrill Lynch, contains an arbitration clause nearly identical to NYSE Rule 347.
[4] The Court notes that even if Merrill Lynch's temporal interpretation of the arbitration agreement's language is adopted, an important factual event behind this controversy occurred before defendants left Merrill Lynch's employ. Merrill Lynch has conceded that defendants were still employed by Merrill Lynch when they took the customer information that enabled defendants to solicit these customers. This factual premise is intimately intertwined with other facts of this controversy. This controversy cannot be resolved without reference to the defendants' activities that occurred before they terminated employment with Merrill Lynch. Thus, even under Merrill Lynch's argument, violations of the employment contract and other activities which enabled the defendants to commit further violations of the employment contract occurred "during the term of the arbitration agreement" and thus "arose out of the employment and termination of employment" of the defendants.