KENTUCKY WEST VIRGINIA GAS
COMPANY, Plaintiff-Appellant,

v.

OIL, CHEMICAL AND ATOMIC WORK-
ERS INTERNATIONAL UNION,
LOCAL NO. 3–510, Defendant-Appellee.

No. 76–1852.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1976.

Decided Feb. 14, 1977.

408

Henry J. Wallace, Jr., Reed Smith Shaw & McClay, Lawrence E. Flatley, Pittsburgh, Pa., Porter M. Gray, Gray, Woods & Cooper, Ashland, Ky., for plaintiff-appellant.

Robert J. Smith, Hostler & Shinaberry, Charleston, W. Va., Cassie Allen, Prestonsburg, Ky., Thomas J. Kircher, Cincinnati, Ohio, for defendant-appellee.

Before WEICK and LIVELY, Circuit Judges, and CECIL, Senior Circuit Judge.

LIVELY, Circuit Judge.

This is an appeal by Kentucky West Virginia Gas Company (the company) from the judgment of the district court dismissing an action brought pursuant to § 301 of the Labor-Management Relations Act of 1947 (LMRA), as amended, 29 U.S.C. § 185. At the time this action was filed the company and Oil, Chemical and Atomic Workers International Union, Local Number 3–510 (the union) were parties to a collective bargaining agreement dated January 19, 1975

(the agreement). Pertinent to this appeal are the following provisions of the agreement:

## ARTICLE I
### OBLIGATIONS

During the term of this agreement there shall be no strikes, slowdowns, or stoppages of work by the employees of the Union or any lockouts by the Company, unless at least sixty (60) days' written notice has been given to the other party by registered mail before such action is taken.

## ARTICLE X
### GRIEVANCE PROCEDURE

Section 1. Should any difference arise between the parties or between any one or more of the employees and the Company relating to the meaning, application, or violation of any provisions of this agreement, or relating to the meaning or application of other conditions of employment existing at the time of the signing of the agreement, or a dispute as to whether an employee was disciplined for proper cause or discharged for just cause, they shall be adjusted in a manner set out as follows:

[A two-step procedure prescribed.]

## ARTICLE XI
### ARBITRATION

Any matters pertaining to the meaning, application or violation of this agreement, or relating to the meaning or application of other conditions of employment existing at the time of the signing of this agreement, which cannot be adjusted by the procedure established in Article X, shall be referred to a Board of Arbitration.

[Method of selection and procedure described.]

\* \* \* \* \* \*

The board of arbitrators shall have jurisdiction and authority only to interpret, apply or determine compliance with the provisions of this agreement, so far as shall be necessary to the determination of the grievance submitted to them; but the board shall not have jurisdiction or authority to add to, detract, or alter in any way the provisions of this agreement. Any findings made or conclusions reached by a majority of the arbitrators shall be submitted to the parties in writing and shall be final and binding upon the parties.

Expenses of the third arbitrator and all general expenses of the Board shall be borne equally by the parties, but each party shall bear the expense of the arbitrator selected by it.

The complaint set forth that the union had served a 60-day strike notice pursuant to Article I and that the notice related to a dispute over the discharge of an employee named Morris. It alleged that the Morris dispute was subject to resolution under the grievance-arbitration procedures contained in Articles X and XI and that the threatened strike would violate the agreement. The complaint also charged that a breach of the agreement in the refusal of the union to process a grievance filed by the company which was based on a disagreement between the parties "as to whether the Union has the right to take strike action under Article I with respect to a dispute subject to resolution under the grievance-arbitration procedure" was itself subject to adjustment under Articles X and XI, "including final and binding arbitration, if necessary." The prayer for relief was two-fold: (1) that the district court enjoin the threatened strike and (2) that the court order the union to follow the grievance-arbitration procedures prescribed in the agreement with respect to both the dispute over the discharge of Morris and the disagreement as to the meaning and application of Articles I, X and XI.

The district court entered a temporary restraining order which prohibited a strike pending determination of whether the court had jurisdiction to entertain the action. Upon further consideration the district court concluded that it did not have power "to enjoin a work stoppage and compel binding arbitration of a grievance over the discharge of an employee, in the face of a contract containing both a broad mandatory arbitration provision and an express reser-

vation of the right to strike." The court found that the collective bargaining agreement in the present case presented an example of the "unusual" situation described by the Supreme Court in *Gateway Coal Company v. United Mine Workers,* 414 U.S. 368, 382, 94 S.Ct. 629, 639, 38 L.Ed.2d 583 (1974):

> It would be unusual, but certainly permissible, for the parties to agree to a broad mandatory arbitration provision yet expressly negate any implied no-strike obligation. Such a contract would reinstate the situation commonly existing before our decision in *Boys Markets.* [*Boys Markets, Inc. v. Retail Clerk's Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970)].

The situation referred to by the Court which existed prior to the decision in *Boys Markets* was that § 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, was held to be an absolute bar to the issuance by federal courts of injunctions against strikes arising out of labor disputes. *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). The restraining order was set aside and the complaint was dismissed.

The district court filed a memorandum opinion in which it concluded that the contract provided two "mutually exclusive" methods of settling disputes, either by use of the grievance-arbitration procedures of Articles X and XI or by self-help in the form of a strike or lockout after 60-days' notice. In finding the remedies to be mutually exclusive the court necessarily concluded that when one party elected to resort to self-help to settle a disagreement the other party could not require resolution of the dispute by means of the grievance-arbitration procedures set forth in the agreement. Thus the effect of the district court's holding is that the provisions for grievance and arbitration, despite their broad language, are not required to be followed in any particular dispute unless both parties agree to this mode of settlement.

As has been noted, the complaint presented two separate claims of breach of contract by the union and sought two distinct forms of equitable relief. The company presses both issues on appeal: (1) that it was entitled to an injunction against a strike pending resolution by the grievance-arbitration procedures of Articles X and XI of the dispute over the Morris discharge, and (2) that it was entitled to an order requiring the union to submit both the Morris dispute and the disagreement over interpretation and application of provisions of the agreement (the company grievance) to the prescribed grievance-arbitration procedures. The union contends that the district court was correct in its construction of the agreement and in its holdings. At oral argument the union also took the position that occurrences since entry of the judgment below have rendered this appeal moot.

## MOOTNESS

The court directed the parties to brief the issue of mootness and to file a stipulation setting forth the events which have occurred since entry of the judgment by the district court. The parties have stipulated as follows:

1. On October 15, 1976, the most recent collective bargaining agreement between the parties (the 1975 agreement), expired by its terms. From and since October 17, 1976, Local 3–510 has engaged in an economic strike against the Company.

2. Prior to and following the October 15, 1976, contract expiration date, the parties have engaged in collective bargaining to reach a successor contract, but at the present time, no agreement has been reached.

3. A primary issue in the present collective bargaining agreement negotiations is the position of Local 3–510 that Article I of the 1975 agreement be included verbatim in any successor contract, and the position of the Company that Article I of any successor contract be modified.

4. At all times following the May 17, 1976, decision of the district court, Local

3–510 has refused and continues to refuse to process the Company grievance dated February 24, 1976 in accordance with the contract grievance arbitration provisions.

5. By letter dated September 2, 1976, Local 3–510 advised the Company of its intention to arbitrate the Morris grievance.[1]

[1] On December 22, 1976, counsel for Local 3–510 advised counsel for the Company that a letter dated December 22, 1976, had been prepared and mailed to counsel for the Company which stated that the strike notice dated February 2, 1976, had been withdrawn.

6. At the present time the designated Company and Union arbitrators are in the process of selecting a third arbitrator to hear and determine the Morris grievance.

■ Though one or more issues in a case may become moot because of events occurring after judgment, the appeal is not rendered moot with respect to other issues as to which there are continuing controversies. *See Textile Workers v. Lincoln Mills,* 353 U.S. 448, 459, 77 S.Ct. 912, 923, 1 L.Ed.2d 972 (1957). The issues in this case will be examined separately to determine whether or not they have become moot.

### A. The Injunction Issue

■ The decision to strike in the present case was directly related to the discharge of the employee Morris. In its answer the union admitted this fact. The strike never materialized, the 60-day strike notice has been withdrawn and the Morris dispute has been submitted to binding arbitration. We conclude that the case is moot insofar as the prayer for preliminary and permanent injunctive relief is concerned since it would be "impossible for this court, if it should decide the case in favor of the plaintiff, to grant any effectual relief whatsoever . . . .," *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895), with respect to the request for an injunction. There is simply no strike or threatened strike to enjoin at this time. In *Brownlow v. Schwartz,* 261 U.S. 216, 217, 43 S.Ct. 263, 264, 67 L.Ed. 620 (1923), the Supreme Court stated that it would "not proceed to a determination when its judgment would be wholly ineffectual for want of a subject matter on which it could operate."

This is not a case where the defendant has voluntarily ceased conduct claimed to be illegal in order to create mootness and is likely to return later "to his old ways." *United States v. W. T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *United States v. Concentrated Phosphate Export Assn., Inc.,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). There is no indication that the union will direct that a strike be commenced in the near future. Withdrawal of the 60-day notice precludes this. Thus the threat of a strike over the Morris discharge is certainly not a "continuing and brooding presence." *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). A different situation existed in *Buffalo Forge v. United Steelworkers,* 428 U.S. 397, 403, 96 S.Ct. 3141, 3145, 49 L.Ed.2d 1022 (1976), where the parties stipulated that though the work stoppage had ended it might be "resumed at anytime in the near future at the direction of the International Union or otherwise."

### B. Arbitrability of the Morris Dispute

■ In its answer the union admitted that the dispute over discharge of the employee Morris was subject to the grievance-arbitration procedures of Articles X and XI. It contended that the provisions of Article I gave it the option to strike in support of its position with respect to Morris after giving 60 days' notice. However, as the stipulation reveals, the union has processed the Morris dispute under Articles X and XI and it is now in the final stage of arbitration. It is clear that the issue raised by the demand in the complaint for an order directing the union to submit the Morris dispute to the grievance-arbitration procedures of the contract has been rendered moot.

### C. The Company Grievance

■ None of the events which have transpired since entry of the district court judg-

ment has affected the vitality of the appeal from the district court's failure to direct the union to process the company grievance. Neither the fact that the agreement has expired nor the fact that the threatened strike was subsequently called off renders this issue moot. In *Buffalo Forge, supra,* 428 U.S. at 403 n.8, 96 S.Ct. 3141, the Supreme Court held that one "live controversy" which continued after expiration of the collective bargaining agreement and return of the workers to their jobs concerned whether or not the explicit no-strike clause of the contract applied to sympathy strikes. A similar controversy exists in this case as to whether Article I permits a strike, after 60 days' notice, over a dispute otherwise within the provisions of Articles X and XI. If the company's position on interpretation and application of Article I should eventually be sustained, it would be entitled to appropriate remedies for the union's breach of the agreement.[1] *Buffalo Forge, supra,* 428 U.S. at 405, 96 S.Ct. 3141. We conclude that the issue of the company's right to have its grievance processed in accordance with the terms of the agreement is not moot.

## MERITS OF THE APPEAL

■ It is settled that a federal court may order specific performance of provisions for arbitration contained in collective bargaining agreements. In determining that § 301 of LMRA did more than merely confer jurisdiction over labor disputes, the Supreme Court held that this section ". . . expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." *Lincoln Mills, supra,* 353 U.S. at 455, 77 S.Ct. at 917. The strong national policy in favor of arbitration of labor disputes is served by this rule.

■ We believe that the district court erred in making the finding that the arbitration provisions of Articles X and XI and

the 60-day notice provisions of Article I established "mutually exclusive" means of settling disputes. This determination was not essential to a decision on whether the court had the power to issue an injunction, but once made, logically led to a denial of the request that the union be required to process the company's grievance. In *Buffalo Forge, supra,* which was decided after the district court judgment in the present case, Mr. Justice White, writing for the Court at 428 U.S. 410, 96 S.Ct. 3141, outlined a two-step analysis which a district court should undertake when requested to enjoin a strike for alleged violation of a no-strike clause in a collective bargaining agreement. The court must first determine whether the strike is over a dispute which the contract requires to be arbitrated. If the strike is not over an arbitrable dispute, there can be no injunction, since § 4 of the Norris-LaGuardia Act (29 U.S.C. § 104) controls and the case is not within the "narrow exception" established in *Boys Markets.* (The holding in *Buffalo Forge* that an injunction was improperly issued was based on the fact that the underlying dispute was not arbitrable.) If the court finds that the strike is over an arbitrable dispute it must next determine whether the contract contains an express or implied no-strike clause. Only if both questions are answered affirmatively may the court then issue an injunction, if the general equitable requirements for such relief are shown to exist. In the present case the parties agreed that the threatened strike was "over" an arbitrable dispute, but the district court concluded that the agreement did not contain a no-strike clause, and this was all that was required to deny an injunction. This determination did not require a denial of the company's prayer for specific performance of the grievance-arbitration procedures with respect to its grievance.

■ Where a collective bargaining agreement contains language which obliges the parties to submit all disputes relating to

1. The company pled that the strike notice required it to take certain costly steps in anticipation of a shutdown.

"the meaning, application or violation" of the agreement to an arbitrator, it is the arbitrator who is charged with the duty to interpret the meaning of the agreement. "It is the arbitrator's construction which was bargained for." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). Obviously, a certain amount of "contractual interpretation" is involved in the analysis which the district court is required to make in a case such as this. *Gateway Coal Company v. United Mine Workers, supra,* 414 U.S. at 382–84, 94 S.Ct. 629. However, the court should not undertake construction of such a contract beyond that interpretation required to determine its jurisdiction to issue an injunction under the doctrine of *Boys Markets, supra.* The question of whether Article I applies to disputes covered by Articles X and XI involves "a substantial question of contractual interpretation," which the parties consigned to an arbitrator. *Gateway Coal, supra,* at 384, 94 S.Ct. at 640. In *Buffalo Forge* the Court held that the question whether a sympathy strike violated the no-strike clause of a collective bargaining agreement, and the appropriate remedies if it did, were ultimately for the arbitrator to decide after resort to the procedures for settlement contained in the contract. The mandatory language of Articles X and XI of the agreement is broad enough to require a similar resort to arbitration in the present case.

The judgment dismissing the complaint is vacated. The case is remanded for entry of a judgment directing that the defendant utilize the grievance-arbitration procedures of the agreement for a binding determination of the issue of whether the union had the right to strike under Article I with respect to a dispute which is subject to resolution under the procedures prescribed in Articles X and XI, as set forth in the February 26, 1976 notice from the company to the union. The other issues on appeal are moot.