**COMPUSERVE, INC., Plaintiff,**

v.

**VIGNY INTERNATIONAL FINANCE LTD., Defendant.**

No. C2–90–341.

United States District Court, S.D. Ohio, E.D.

Aug. 9, 1990.

On Motion for Clarification Aug. 16, 1990.

John Wolcott Zeiger, Columbus, Ohio, for plaintiff.

Harold Edward Wonnell, Columbus, Ohio, for defendant.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court upon defendant's, Vigny International Finance, Ltd. (hereinafter "Vigny"), motion for temporary restraining order filed May 29, 1990. In response to this motion, this Court on May 30, 1990 held a preliminary conference pursuant to Rule 3.7.1 of the

Rules of the United States District Court, Southern District of Ohio. Following said conference, on May 31, 1990, a stipulation and order was entered whereby this matter was set for an oral hearing on June 13, 1990. It was further ordered that each party was to file a memorandum of law with respect to the arbitration issue. The parties were instructed that simultaneous briefs were to be filed no later than 5:00 p.m. on June 8, 1990. Further, the parties were allowed to file a reply, which was due no later than Monday, June 11, 1990. The plaintiff, Compuserve, Inc. (hereinafter "Compuserve") voluntarily agreed not to discontinue the provision of the on-line computer services in dispute to Vigny's South American subscribers prior to July 31, 1990. In consideration of that, Vigny voluntarily agreed to deposit the sum of $6,000.00 with the Court on or before the June 8, 1990 date. Vigny likewise was ordered to promptly initiate proceedings for arbitration of the claims asserted in their counterclaim in order to expedite the arbitration process, should this Court ultimately rule arbitration was mandated. It must be noted, that Compuserve on May 11, 1990, filed a complaint for injunctive relief within this court which initiated this case. Therefore, while this Court was moved into action with the filing by Vigny of the temporary restraining order, this Court will also address the filing of the complaint for injunctive relief.

## FACTS

On October 26, 1987, Compuserve and Vigny entered into a written agreement, entitled "License and Distributorship Agreement". In the Agreement, Vigny was authorized as a distributor and licensee for the purposes of selling, marketing and distributing the Compuserve product, specifically called the Compuserve Business Service, to residents of South America and Mexico. After the date of the original agreement, on or about May 11, 1989, a document entitled "Addendum to License and Distributorship Agreement" allowed Vigny to sell and market Compuserve Consumer Information Service throughout the same geographic territory. These two documents incorporate the agreements between the parties. The agreement licensed Vigny to use many of Compuserve's trademarks, trade names, and other proprietary marks, including the trademark and trade name "Compuserve". Vigny proceeded to market and sell the Compuserve service lines.

According to Vigny, they have used their expertise, business contacts and knowledge of international finance and business to market the products of Compuserve. Said marketing has resulted in the formation of three written contracts in Venezuela, Chile and Argentina. A fourth contract was negotiated and agreed to by all the parties, but not signed, within another region. Vigny alleges that each of these agreement was entered into with the knowledge, approval, and consent of Compuserve. Further, the employees of Compuserve took part in the negotiations and technical coordination and each was subsequently ratified in its written form by Compuserve.

Vigny, in the latter part of 1989, entered into negotiations with a company in Mexico called Banamex. These negotiations had the objective of providing services to subscribers in Mexico. Thereafter, in late October, 1989, the representatives of Banamex, Compuserve and Vigny met. As a result of that meeting, Vigny and Banamex signed an agreement on October 31, 1989 which contemplated further negotiation and agreements between the parties. These negotiations continued into early January, 1990, where all three parties again met in Mexico City to finalize the contractual arrangements. Compuserve, as alleged by Vigny, was represented at these meetings. Thereafter, a draft agreement was completed by the attorneys for Banamex and Vigny on January 10, 1990. According to Vigny, as of the January 10, 1990 date, there was no indication from Compuserve that there was any intent to terminate its agreement with Vigny or that it did not intend to execute the agreement with Banamex and Vigny. However, instead of signing the written agreement which had been negotiated by the parties and Banamex, on January 16, 1990, Compu-

serve's President, Charles McCall, sent two letters to Raul Buenaventura, President of Vigny. These letters stated that they constituted notice of Compuserve's intent to terminate the agreement. Thereafter, as of the January 16, 1990 date, Compuserve exercised its contractual right to terminate the agreement effective 30 days later.

Compuserve would take issue with many of the factual statements raised by Vigny. According to Compuserve, they provided Vigny with the license, services, products and the necessary support services, including the needed information to successfully tap the South American and Mexico markets. Vigny, however, simply failed to perform the agreed duties as the distributor and licensee. Therefore, according to Compuserve, more than two years after the execution of the agreement, Vigny has failed to generate the first dollar of the business service revenue and has produced a relatively small amount in consumer service fees. Compuserve alleges that Vigny as the distributor and licensee in South America and Mexico has distributed very little. Compuserve relies upon their complaint for injunctive relief to specifically address the breaches of the agreement by Vigny; however, some of the alleged breaches included: licensee defaults, the failure to generate revenues equal to the agreed minimums, the failure to pay amounts due, the unauthorized transfer of rights to Compuserve services, the disclosure of Compuserve confidential information, the failure to properly register Compuserve's proprietary marks, and the improper representation of Vigny as a Compuserve agent. Vigny refutes the aforementioned.

## LAW AND ANALYSIS

Before this Court are two separate sets of motions, one filed by the plaintiff and one by the defendant, both asking for equitable relief. Compuserve, on May 11, 1990, filed a complaint for injunctive relief. Within that complaint, Compuserve prays for an order permanently enjoining Vigny from engaging in operating as the distributor of Compuserve; representing or communicating with any person that Vigny is the licensee and distributor of Compuserve services and products; displaying or using in any way the trademark and trade name "Compuserve"; infringing upon any of Compuserve's other proprietary marks; and any other equitable relief which this Court deems appropriate.

Vigny on May 29, 1990, filed a motion for a temporary restraining order and asked this Court to restrain Compuserve from terminating its on-line services to the subscribers in Argentina and Chile. Before the Court also stands two simultaneous motions which were filed as directed by the Order of this Court on May 31, 1990. These motions within this matter are paramount, because the language specifically contained within the License and Distributor Agreement and the Amendment thereto specifically makes reference to injunctive relief and mandatory arbitration provisions.

### A. CONTRACT PROVISIONS

Provision XXII Arbitration provides in pertinent part:

All disputes arising out of, or in connection with, this Agreement, including the making, performance, non-performance, or termination hereof, shall be resolved by arbitration pursuant to the then-current Rules of Conciliation and Arbitration of the International Chamber of Commerce. The arbitration shall take place in the state of Ohio. The language to be used in the arbitral proceedings shall be English. The arbitrator or the majority of such arbitrator shall be individuals skilled in the legal and business aspects of the subject matter of this Agreement. Each party shall select one arbitrator, and the two so selected shall select a third. Failing the selection of an arbitrator by either party, the arbitrator shall be selected by the International Chamber of Commerce. The award of arbitration shall be final and binding upon the parties. Judgment upon the award may be entered in any court having jurisdiction or application may be made to such court for judicial accept-

ance of award or an order of enforcement.

Provision XXI Applicable Law, Subsection D provides:

Nothing herein contained shall bar licensor's rights to obtain injunctive relief including restraining orders and/or preliminary injunctions against threatened conduct that will cause loss or damage.

Subsection C of this same section provides:

No right or remedy conferred upon or reserved to Licensor or Licensee by this agreement is intended to be, nor shall be deemed, exclusive of any other right or remedy provided or permitted herein or by law but each shall be cumulative of every other right or remedy.

Finally, Provision XX Severability and Construction Subsection A provides:

The parties agree that each covenant and provision of this agreement shall be construed as independent of the other covenant or provision of this agreement. The provisions of this agreement shall be deemed severable.

These provisions when taken and read as a whole within the License and Distributor Agreement indicates to this Court that the parties' intention was to provide for two avenues of relief. Arbitration was the proper process which should be maintained for any action at law to determine disputed matters of the underlying contract. Equitable relief was also afforded, but specifically to the Licensor only. When you consider Provision XX(A) within this contract which provides for the severability of any provision in the contract that might at some point become void and combine that with Provision XXI(C) allowing for the non-exclusivity of any other right or remedy, the contract as a whole can be reconciled. No right or remedy is deemed to be paramount, hence exclusive, to any other right or remedy. Therefore, nothing indicates that arbitration takes precedence over the licensor's right to obtain injunctive relief. The same is true, however, that nothing within the licensor's right to obtain injunctive relief is exclusive of that of arbitration. And, once all the independent provisions of the contract are construed, they too would not provide for any one provision being exclusive of the other. Therefore, the contract speaks for itself, is clear within its intent and meaning, and the provisions contained therein are neither unconscionable nor unreconcilable. The agreement on its face provides for differing avenues of relief, which the courts have ultimately upheld.

## B. ARBITRATION CLAUSES

I. Vigny moves this Court for an order denying Compuserve or Vigny the right to proceed to arbitration. Vigny argues that XXI.D and Section XXII conflict with one another. Vigny contends that the intent of the parties was not to commit to arbitration exclusively and that Section XXI.D clearly shows that arbitration was not the exclusive avenue for redress of the underlying contractual disputes. Instead, Vigny would have this Court find that Section XXII does not require binding arbitration over the disputes about the performance of the agreement. Vigny's main contention with the two provisions centers around Vigny's purported belief that two forums, the federal district court and arbitration, should not be permitted. According to Vigny, the availability of the second forum would jeopardize the power of this Court. Therefore, this Court should not mandate arbitration. [See 9 U.S.C. § 4].

Vigny believes that the two sections requiring both arbitration and allowing for Compuserve to sue in equity within the district court could only lead to the conclusion that the parties did not agree to arbitrate every dispute. Instead, the parties agreed to arbitrate only those matters which Compuserve did not specifically decide to bring to federal court. This reading, according to Vigny, would disallow arbitration of the disputed matters within this case, because Compuserve has specifically brought suit within this Court which in effect cancels the arbitration provision.

Compuserve disagrees with the above referenced analysis by Vigny. Relying upon 9 U.S.C. § 3, Compuserve contends that the arbitration provision found within

the License Agreement demands arbitration. Compuserve cites to the case of *Dean Witter Reynolds, Inc. v. Bird*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) which held that the Federal Arbitration Act requires a district court to enforce the agreement of the parties, even when such enforcement compels judicial determination of some claims and arbitration of others. According to Compuserve, the provisions requiring both arbitration and/or suits in equity do not require a choosing by Compuserve of which remedy to pursue. The two provisions can stand side by side, requiring arbitration as to all underlying disputes as to the License Agreement, as well as permitting Compuserve to seek injunctive relief to protect their proprietary marks. Therefore, Compuserve would have this Court order that Vigny's claims proceed to arbitration.

■■■ The question of whether a controversy is arbitratable under the contract is a question for the Court to decide upon an examination of the contract. *Siam Feather and Forest Products Co., Inc. v. Midwest Feather Company, Inc.*, 503 F.Supp. 239, 241 (S.D.Ohio 1980) *citing International Union v. Benton Harbor Malleable Industries*, 242 F.2d 536 (6th Cir.1957) *cert. denied*, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31 (1957); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962); *Local 205, IUE v. General Electric Co.*, 233 F.2d 85, 101 (1st Cir.1956), *aff'd* 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957); *International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Ass'n*, 574 F.2d 783, 787 (3rd Cir. 1978), *cert. denied* 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978). *See also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). When exam-

ining arbitrating provisions, the Court must keep in mind the strong presumption in favor of arbitrability set forth in the *Steel Workers Trilogy. See United States Steel Workers v. American MFG Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steel Workers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steel Workers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *AT & T Technologies v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Finally, arbitrability "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted disputes. Doubts should be resolved in favor of coverage." *Siam Feather* at 241, *citing United Steel Workers v. Warrior and Gulf Navigation Co.*, 363 U.S. at 581, 80 S.Ct. at 1352.[1]

Provision XXII specifically provides:

All disputes arising out of, or in connection with, this Agreement, including the making, performance, non-performance, or termination hereof, shall be resolved by arbitration pursuant to the then-current Rules of Conciliation and Arbitration of the International Chamber of Commerce ...

■■■ As a matter of law, the arbitration provision found within the License Agreement requires arbitration of the underlying disputes. According to 9 U.S.C. §§ 2 and 3, such a provision is both valid and requires this Court to stay any proceedings relating to the contractually bound arbitration provisions found within the contract. Vigny's argument that the

---

1. This Court, therefore, adopts the test pronounced by the Honorable Robert J. Ward of the United States District Court (S.D.N.Y.) where in *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961 (1987) he stated: When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; sec-

ond, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

contract provides for the Court or the arbitrator to hear the underlying dispute, but not both, is not persuasive. The contract when read as a whole clearly indicates the two avenues upon which to seek relief. Those two avenues do not require the picking and choosing by Compuserve to proceed with their contractually bound remedies. Neither does this Court find persuasive Vigny's argument of inequitable results and the unfairness associated with both district court and arbitration intervention. The Supreme Court in *Dean Witter* has clearly addressed Vigny's concerns.

In *Dean Witter*, the Supreme Court specifically said:

The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims. The Act, after all, does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements. *Id.* 470 U.S. at 219, 105 S.Ct. at 1241.

The Supreme Court specifically rejected the Fifth, Ninth and Eleventh Circuits' reliance upon the "Doctrine of Intertwining". *Id.* at 216, 105 S.Ct. at 1240. The doctrine of intertwining established that when arbitrable and non-arbitrable claims arose out of the same transaction, and such claims were sufficiently intertwined factually and legally, the district court may in its discretion

deny arbitration as to the arbitratable claims and try all claims together in federal court. *Id.* The Supreme Court found that this interpretation was in full agreement with their other holding in *Moses H. Cone Memorial Hospital*, 460 U.S. 1, 103 S.Ct. 927, in which they affirmed an order requiring the enforcement of an arbitration agreement, even though the arbitration would result in bifurcated proceedings. *Id.* 470 U.S. at 220–221, 105 S.Ct. at 1242–1243. *See also, Liskey v. Oppenheimer and Co., Inc.*, 717 F.2d 314, 320, (6th Cir.1983). In light of the aforementioned, Vigny's arguments that separate proceedings would be both inequitable, and unjust, simply does not comport with the Supreme Court mandates found in *Dean Witter*. Therefore, since neither the contractual language requires the parties to pick between arbitration or court intervention, and since Vigny's claim of inequitable results occurring in separate proceedings is not in line with the directives of the Supreme Court, mandatory arbitration is hereby ORDERED as to all underlying disputes regarding the License Agreement and the Amendment thereto.[2]

II. While the parties have addressed and this Court has now ordered mandatory arbitration, neither party has touched upon whether this Court may still grant injunctive relief pending said arbitration. In fact, this very issue has brought a split among the varying circuits with the Sixth Circuit apparently not addressing the point directly.[3] The issue presented within this scope is a simple one. Can this Court, after utilizing the directives of *Dean Witter* and *Moses H. Cone* in favoring arbitra-

**2.** This Court is well aware of Vigny's waiver argument presented herein as well as that a party may waive any of its contractual rights, including the right to arbitration. This waiver may be express, or it may also be implied when the party actively participates in litigation or acts inconsistently with its rights to proceed with arbitration. *Siam Feather* at 242. *See also Marvin Hayes Lines, Inc. v. Central States Southeast and Southwest Areas Pension Fund, et al.*, No. 3–84–0906, 1985 WL 6087 (M.D.Tenn. July 29, 1985) (Lexis, Genfed Library, Dist. file). Compuserve's filing of injunctive relief was both proper in terms of the contract and in no way constitutes a waiver of their right to arbitration.

**3.** This Court has searched the authorities within the Sixth Circuit and has not found any case directly on point. The Court has found that the issue has been addressed in the labor context, *See Ky. W.Va. Gas Co. v. Oil, Chemical and Atomic Workers*, 549 F.2d 407 (6th Cir.1977); *Southern Ohio Coal Co. v. United Mine Workers of America*, 551 F.2d 695 (6th Cir.1977); *Division 1447, Amalgamated Trans. Union, AFL–CIO*, 659 F.2d 722 (6th Cir.1981); and, *Aluminum Workers International v. Consolidated Aluminum Corp.*, 696 F.2d 437 (6th Cir.1982); as well as antitrust matters. *See Andriot v. Quickprint of America, Inc.*, 563 F.Supp. 48 (S.D.Ohio 1983).

tion in those situations where the parties have contractually bound themselves to arbitration still enjoin the disputed conduct pending the arbitration process and ultimate conclusion? As referenced above, the answer to this question has caused a split among the varying circuits.[4]

Some district courts and circuits have been more limited in their allowance for injunctive relief pending arbitration. In *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Thompson*, 574 F.Supp. 1472 (E.D. Mo.1983) the court denied Merrill Lynch's request for a preliminary injunction because the language and the purposes of the Arbitration Act prevented them from issuing an injunction under any circumstance. *Thompson* relied upon Section 3 of the Arbitration Act which provides that if the court is satisfied that the dispute is referable to arbitration, then "the court ... shall, on the application of one of the parties, stay the action until such arbitration has been had" *Id.* at 1478. The court relied heavily upon the "shall" provision referenced above and argued that even granting preliminary injunctive relief would violate the Act because the court would be required to address part of the merits and that the plain meaning of the Act required the court to stay its hand as to the underlying disputes, once arbitration was ordered. *Id.* See also *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Thompson*, 575 F.Supp. 978, 979 (N.D.Fla.1983); *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. McCollum*, 666 S.W.2d 604–608 (Tex.App. 14 Dist.1984); and *JAB Industries, Inc. v. Silex SPA*, 601 F.Supp. 971–979 (S.D.N.Y. 1985).

The Eighth Circuit in *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Hovey*, 726 F.2d 1286 (8th Cir.1984) has also limited the Court's ability to grant injunctive relief pending arbitration. In *Hovey*, the Court relied upon *Prima Paint Corp. v. Flood and Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) and *Moses H. Cone*, 103 S.Ct. at 940–941 for the proposition that in order to grant injunctive relief, the Court would be required to inject itself into the merits of the case which is more appropriately left for an arbitrator. *Id.* at 1292. The *Hovey* Court, therefore, indicated that without specific contractual language being provided by the parties which would allow the court to enjoin pending arbitration, any such court ordered preliminary injunction would go against the purposes of the Arbitration Act. *Hovey*, in essence, stands for the proposition of the contractual language test, whereby the court shall not intervene and order preliminary injunctive relief, if the parties have not contemplated such relief within the contract. *Id.*

Other circuits have allowed the courts to enjoin parties to maintain the status quo pending arbitration. The Fourth Circuit held in *Merrill Lynch, Pierce, Fenner and Smith v. Bradley*, 756 F.2d 1048, 1053–54 (1985) that preliminary injunctive relief should be granted when such relief is necessary to prevent the arbitration process from becoming a hollow formality. The *Bradley* court found nothing within Section 3 of the Act which would require the court to stay its hand completely. *Id.* In fact, the court stated: "Congress would [not] have enacted a statute intended to have the sweeping effect of stripping the federal judiciary of its equitable powers in all arbitrable commercial disputes without undertaking a comprehensive discussion and evaluation of the statute's effect". *Id.* at 1052.

In *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir.1986), the court followed the *Bradley* approach in allowing for injunctive relief as long as the parties met that Circuit's four part test for the issuance of preliminary injunctions. Decisions in the First, Second, Seventh and Eighth Circuits have also taken this approach. *See Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co. of New York*, 749 F.2d 124 (2nd Cir.1984); *Sauer–Getriebe K.G. v. White Hydraulics, Inc.*, 715 F.2d 348 (7th Cir.1983); and *Fer-*

---

**4.** For an excellent analysis *See Comment, Injunctions Pending Arbitration and the Federal Arbitration Act: A Perspective from Contract*

*Law*, 54 University of Chicago L.Rev. 1373 (1987) which cite is incorporated by reference herein.

ry–Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589 (8th Cir.1984). These Circuits in utilizing the four part test have relied upon the requirement that the court must first find:

> ... whether the plaintiffs have shown a strong likelihood of success on the merits; whether the plaintiffs have shown irreparable injury; whether the issuance of a preliminary injunction would cause substantial harm to others; and where the public interest lies.

See in the Sixth Circuit; Adams v. Federal Express Corp., 547 F.2d 319, 323 (6th Cir. 1976), citing North Avondale Neighborhood Ass'n v. Cincinnati Metropolitan Housing Authority, 464 F.2d 486 (6th Cir. 1972). Accord, Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir.1977).

Finally, in Guinnes–Harp Corp. v. JOS Schlitz Brewing Co., 613 F.2d 468 (2nd Cir.1980), the Second Circuit allowed for injunctive relief, if in reading the agreement it provides for the maintenance of the status quo during arbitration. The Guinnes–Harp Corp. Court reasoned that the enjoining party is really seeking a final, rather than a preliminary injunction, therefore, it must show only that the agreement provides for the maintenance of the status quo. Id. at 472. By taking this approach, the Court would not need to demonstrate the probable success on the merits or the ultimate controversy; instead, only whether the agreement as read as a whole would provide for the status quo to be maintained. As indicated above, the Sixth Circuit has not directly addressed the issue.[5]

■■■ This Court is of the opinion that the proper test to be employed is similar to that of Teradyne. In reading the Arbitration Act, this Court is not of the opinion that the judiciary is forever precluded from enjoining the parties to maintain the status quo pending arbitration. Nothing contained within 9 U.S.C. § 3 can be read to be that inclusive. However, this Court also is of the opinion that the proper test to be employed would be that of the preliminary injunctive standard which this Circuit utilizes. By Congress specifically not addressing this issue within the Act, this Court opines that the proper test for injunctive relief should be that which the particular Circuit has established. This Court should not add meaning to the Act and create tests which Congress never contemplated. This Court is bound to follow the precedent established within this Circuit.

In this particular matter, Vigny is seeking preliminary injunctive relief. Therefore, this Court is bound to follow the precedence established on granting a preliminary injunction found within the Sixth Circuit. In so doing, the Court is not ultimately ruling upon the merits. Therefore, the Court is in no way necessarily interjecting or forecasting the arbitration decision. Merely, the Court in granting injunctive relief pending arbitration, is maintaining the status quo of the parties. Nothing could be interpreted in said granting of injunctive relief, or the not granting of such injunctive relief, which should affect the arbitrator's ultimate decision.

Therefore, IT IS THE ORDER of this Court that oral argument within this matter is hereby set for Monday, August 20, 1990 at 2:00 p.m. This Court is specifically concerned with both parties addressing fully their respective motions for injunctive relief, as well as discussing their opponent's motion in detail. Particularly, this Court points the parties to the case of Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir.1982) quoted in In re DeLorean 755 F.2d 1223, 1229 (6th Cir.1985) wherein it stated:

> In Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir.1982), this Court approved a test that would allow a court to grant a preliminary injunction "where the plaintiff fails

---

5. It should be noted that Justice White and Justice Brennan disagreed with the denial of Certiorari in Merrill Lynch, Pierce, Fenner and Smith v. McCollum, 666 S.W.2d 604 (1984) wherein this same issue of whether 9 U.S.C. § 3 bans a court from issuing a temporary injunction pending arbitration of contractual disputes was in issue. See 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985) reh. den. 470 U.S. 1024, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985).

to show a strong or substantial probability of ultimate success on the merits of his claim, *but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued."*

*Id.* (Emphasis Added). *See also Riverside Realty Co. v. Federal Deposit Insurance Corp.,* 465 F.Supp. 305, 315 (M.D.Tenn. 1978) where it stated:

The most prominent reason for granting a preliminary injunction is that without such judicial intervention into the affairs of the parties prior to a full trial on the merits of the case, the applicant for such relief is likely to suffer irreparable injury. Indeed the prevention of harm of such kind or maginitude as cannot be adequately redressed through legal remedies is the very *raison d'etre* for the extraordinary equitable remedy of injunction. Therefore, "[o]nly when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." *Wright & Miller, Federal Practice and Procedure:* Civil § 2948.

Since this Court is not ultimately going to rule upon the merits of this case, inasmuch as that is the proper function of the arbitrator, the concern in granting or denying either party's motion for injunctive relief centers upon the irreparable harm element.

Therefore, the parties are directed that initial briefs are due no later than 5:00 p.m. on Thursday, August 16, 1990 with any reply due in chambers by Noon on the August 20 oral hearing date.[6] The Order of July 31, 1990 shall be fully incorporated herein.

IT IS SO ORDERED.

## ON MOTION FOR CLARIFICATION

This matter was before the Court on the verbal motion of Compuserve, Inc. for a clarification of this Court's Opinion and Order dated August 9, 1990. All counsel for the respective parties were present via a telephone conference held within chambers. The issue which surrounded the telephone conference was whether or not this Court was requiring the parties to ultimately seek arbitration as to the underlying contractual disputes involved within this matter or whether in fact this Court would proceed to hear Compuserve's motion for permanent injunction before any arbitration proceeding was to commence. At the conclusion of both parties' arguments in support of their respective positions as to the Opinion and Order, this Court rendered a Decision.

Therefore, IT IS THE ORDER of this Court that the Opinion and Order within this matter clearly states on page 1279 thereof that mandatory arbitration was ordered as to all underlying disputes regarding the License Agreement and the Amendment thereto. While this Court recognizes that Compuserve, within the contract, afforded themselves the ability to seek injunctive relief, this Court also held in the Opinion and Order that case law also allowed Vigny to approach the Court and seek injunctive relief. Any injunctive relief which would be granted by this Court at this time would only be that of relief pending arbitration. Therefore, this Court at no time indicated that Compuserve's motion for permanent injunction would take precedence over that of the arbitration provision found within Section XXII of the parties' agreement. This matter (whether or not Compuserve validly terminated the agreement with Vigny) is a matter involving the underlying contract which ultimately, by contract, must proceed to arbitration. Therefore, any injunctive relief which could be granted would be that of either maintaining or not maintaining the status quo of the parties pending said arbitration. Therefore, the parties were ordered to brief the Court on the issue of injunctive relief pending arbitration.[1]

---

6. The parties are directed to local rules 4.1.2 and 4.1.3 of the Rules of the United States District Court for the Southern District of Ohio for preferential authority to be cited.

1. It is apparent to the Court that without a valid termination of the License Agreement and Amendment, Compuserve could not obtain a trademark or proprietary mark infringement injunction.

Therefore, IT IS THE RENEWED OR-DER of this Court that the parties are to appear in chambers on August 20, 1990, for an oral argument regarding their respective positions on injunctive relief pending arbitration. Each party will be afforded 90 minutes per side to present their respective issues within this matter. The 90 minute time frame may be broken up by the parties in any manner which they so choose presenting first their argument followed by any rebuttal.

IT IS SO ORDERED.