DENALI FLAVORS, INC., Plaintiff,

v.

MARIGOLD FOODS, L.L.C.,
Defendant.

No. 1:02–CV–346.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 15, 2002.

Andrea J. Bernard, Grand Rapids, MI, Robin L. Preble, Fredikson & Byron, P.A., Minneapolis, MN, for defendant.

Mark H. Verwys, Plunkett & Cooney, Grand Rapids, MI, for plaintiff.

## OPINION

ENSLEN, District Judge.

Defendant Marigold Foods, L.L.C. has moved to dismiss or stay the instant action and to compel arbitration. This Motion has now been fully briefed and the Court determines that oral argument is unnecessary in light of the issues and legal briefing presented. *See* Local Civil Rule 7.2(d).

## BACKGROUND

This action was filed on May 17, 2002. Plaintiff Denali Flavors, Inc.'s Verified Complaint alleges counts for trademark infringement (Count 1) and unfair competition/false designation (Count 2) under the

Lanham Act relating to Defendant's marketing of "knock off" ice cream. More particularly, Plaintiff markets ice cream under the trademark Moose Tracks [R] (as well as more than a dozen other trademarks) and the Lanham Act alleged violations relate to Defendant's marketing of "knock off" ice cream under names such as Moose Lake Fudge, Bear Tracks and Cow Tracks.[1] Count 3 of the Verified Complaint requests injunctive or equitable relief under state law. The Complaint alleges that Defendant is a former licensee of Plaintiff and that Plaintiff terminated the Licensing Agreement on May 17, 2002, due to Defendant's failure to utilize best-efforts in selling the licensed products, Defendant's breach of good faith in marketing "knock off" products, and Defendant's failure to timely pay and document royalties. (Verified Complaint at ¶ 18 and Exhibit E.) The Complaint alleges that Defendant acted out of a motivation to profit from registered marks while avoiding royalty payments and avoiding the expense of purchasing ingredients required by the Licensing Agreement. (*Id.* at ¶ 12.) The Complaint alleges that Defendant filed a Demand for Arbitration with the American Arbitration Association ("AAA") relating to claims for breach of contract on May 17, 2002. (*Id.* at ¶ 18 and Exhibit F.) However, no claim for breach of contract is contained within the Complaint.

It is clear from the briefing that the case has not been accepted for arbitration because the Licensing Agreement did not name the AAA as a designated arbitrator. Also, the parties have refused to submit a Joint Submission for Arbitration since they dispute which issues should be submitted for arbitration. Defendant wants both contract issues and infringement issues submitted whereas Plaintiff wants only contract issues submitted. (*See* Affidavit of Andrea Bernard; Plaintiff's Brief in Opposition, at 7.) Thus, no arbitration is presently pending or is contemplated by Plaintiff.

On April 3, 1997, the parties entered into the Licensing Agreement relating to the marketing of ice cream under the Moose Tracks [R] trademark as well as 13 other trademarks. (*See* Defendant's Motion, at Exhibit A of Exhibit A.)[2] The Licensing Agreement provides Plaintiff with the sole right to develop new trademarks and flavors under the "umbrella" of Plaintiff's trademarks. (*See id.* at ¶ 9.) The Licensing Agreement provides or provided (depending on whether it has in fact been terminated) to Defendant the right to sell "product" in limited territory (that is Plaintiff's trademark ice cream manufactured and marketed as directed by Plaintiff in the specified states) in exchange for the payment of royalty payments for the sale of the product. (*Id.* at ¶¶ 1–9.) The Agreement contains an arbitration clause which provides that "a dispute concerning this agreement, or either parties' responsibilities under the agreement ... shall be submitted to arbitration." (*Id.* at ¶ 19.) The Agreement did not specifically name arbitrators, but did provide a mechanism for determining the arbitrators. (*Id.*)

## LEGAL STANDARDS

 It is not disputed that the resolution of this Motion is to be made under the

---

1. The question of how words descriptive of animal footprints became the monikers for fashionable ice cream is one worthy of the finest linguists, anthropologists, or philosophers, not to mention trade mark attorneys. "Curiosity is the very basis of education and if you tell me that curiosity killed the cat, I say only the cat died nobly." Arnold Edinborough, Convocation Address, University of Ottawa (October 1962).

2. "Exhibit A" is the first attachment to Defendant's Exhibit A.

governing provisions of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The pertinent legal standards and procedures for resolving motions to compel arbitration were explained in *Stout v. J.D. Byrider,* 228 F.3d 709, 714–15 (6th Cir.2000) as follows:

> Under the Federal Arbitration Act, 9 U.S.C. § 2, ("FAA"), a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation. *See Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 270, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 52–54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).

> When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Claims relating to fraud in the making of the arbitration agreement are determined by the court. *See C.B.S. Employees Federal Credit Union v. Donaldson, Lufkin and Jenrette Securities Corp.,* 912 F.2d 1563, 1566 (6th Cir. 1990). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *See Soler Chrysler–Plymouth,* 473 U.S. at 626, 105 S.Ct. 3346, 87 L.Ed.2d 444; *Arnold v. Arnold,* 920 F.2d 1269, 1281 (6th Cir.1990). Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *See Soler Chrysler–Plymouth,* 473 U.S. at 626, 105 S.Ct. 3346, 87 L.Ed.2d 444.

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *See Compuserve, Inc. v. Vigny Int'l Finance, Ltd.,* 760 F.Supp. 1273, 1278 (S.D.Ohio 1990).

*Id.*

### LEGAL ANALYSIS

Following the four-step process set forth above, the first question is whether the parties agreed to arbitrate. There is no dispute between the parties that they entered into a binding agreement to arbitrate, namely the Licensing Agreement described above.

Plaintiff's real opposition to arbitration concerns the second step of the *Stout* analysis; that is, Plaintiff argues that it did not agree to arbitrate the trademark infringement claims because such claims do not fall within the scope of the arbitration agreement. In favor of this position Plaintiff cites the contract language and the holding in *Tracer Research v. National Environmental Services Co.,* 42 F.3d 1292, 1294–95 (9th Cir.1994). In *Tracer,* the Ninth Circuit held that a tort claim for misappropriation of trade secrets was not covered by an arbitration clause in a li-

censing agreement because the tort would arise independent of whether there was a contractual remedy for misappropriation of trade secrets, the tort remedy would not depend on contractual remedies under the agreement, and the determination of the tort claim would not require interpretation of the agreement.

Defendant disagrees with Plaintiff's "narrow" reading of the contract's arbitration clause. Defendant also asserts that the contract language requires arbitration because the instant Complaint concerns generally the subject of the Licensing Agreement, because the infringement claims are "inextricably intertwined" with the Agreement, and because it would be a waste of resources to separately decide the contract issues and infringement issues. Defendant cites in favor of this argument (among other cases) the unpublished decision in *ITT Industries, Inc. v. Werner Pump Co.*, 2001 WL 1658220 (S.D.N.Y. Dec.27, 2001). The *ITT Industries* case was a trademark infringement suit that involved contract claims which were clearly arbitrable and tort claims (including infringement claims) which related to the contract claims. On consideration, the Southern District of New York determined that all claims should be arbitrated because the allegations "touch[ed] matters" covered by the arbitration agreement and because the legal labels attached were irrelevant. *Id.* at *2 (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987) and *Soler Chrysler–Plymouth*, 473 U.S. at 625 n. 13, 105 S.Ct. 3346).

 On consideration of the precedents cited and the arguments made, the Court determines that Plaintiff has the better argument notwithstanding the usual presumption in favor of arbitration. The arbi-

tration clause used in this case was in terms of its language and purpose directed at disagreements relating to royalties and sale of the licensed products. The instant cause of action concerns something which was specifically not within the contemplation of the Licensing Agreement—the manufacture of knock-off brands. The Licensing Agreement implicitly, if not explicitly, prohibited such conduct, but did not contemplate resolving infringement claims through arbitration. Furthermore, this case is like the *Tracer* case and dislike the *ITT Industries* case in that the only pending claims relate to a separate tort action concerning which the trier of fact need not consult the terms of the contract to determine an appropriate remedy. The facts of this case do not "touch" the contract nor are they "inextricably intertwined" with the contract in any sense sufficient to compel arbitration. Moreover, the Court has greater confidence in the reported decision of the Ninth Circuit as opposed to the unreported decision of the Southern District of New York.[3]

This resolution resolves the Motion and makes it unnecessary for the Court to address the remaining steps in the *Stout* analysis.

### CONCLUSION

For the reasons stated, an Order shall issue denying the Motion to Dismiss or Stay and Compel Arbitration.

---

**3.** There are many reasons for not publishing a decision; but among those reasons is that sometimes an opinion does not represent the best work of a judge, or, at least, work which the judge feels comfortable in recommending as precedent.